**Linda M. MONETTE, Appellant,**

v.

**Robert A. HOFF, JR., Appellee.**

No. S–8188.

Supreme Court of Alaska.

May 15, 1998.

---

Linda M. Monette, Anchorage, pro se.

Stephen F. McKee, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE, and BRYNER, JJ.

*OPINION*

PER CURIAM.

Following trial, the superior court awarded a child's custody to his father and ordered that the mother's visitation be supervised. We affirm these orders, because there was credible trial evidence that the mother was unable to meet the child's psychological and emotional needs and posed a potential risk of abduction and flight, and that unsupervised visitation might harm the child. But we remand the child support issue for clarification, because it is unclear whether the court considered the issue de novo or deferred to an administrative support order.

Linda Monette (formerly Wade) and Robert Hoff were never married. They had one child, Thomas Wade–Hoff (Tommy), born February 7, 1992. Hoff moved from Anchorage to Houston, Texas in late June 1993. He filed a complaint for custody in the superior court in Anchorage in October 1993. After interim proceedings, Tommy moved to Texas to live with his father in September 1994. In November 1994 the Alaska Child Support Enforcement Division (CSED) calculated Monette's child support obligation as $370 per month.

A trial was held from March 24 through March 26, 1997. Superior Court Judge Michael L. Wolverton granted full custody of Tommy to Hoff and awarded Monette supervised visitation. The superior court also found that Monette had the ability to continue to pay $370 per month child support. Monette appeals.

"We will reverse a trial court's resolution of custody issues only if [we are] convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous." *Vachon v. Pugliese,* 931 P.2d 371, 375 (Alaska 1996) (citation omitted).

> When reviewing a trial court's findings of fact, we are directed by the principle that "[i]t is primarily the trial court's function to weigh the evidence for the purpose of making findings, and on appeal, deference must be given to the trial court's decision, particularly because of the trial court's advantage in observing the witness."

*Holl v. Holl,* 815 P.2d 379, 380 (Alaska 1991) (quoting *Bonjour v. Bonjour,* 566 P.2d 667, 669 (Alaska 1977)). *See also J.F.E. v. J.A.S.,* 930 P.2d 409, 411 (Alaska 1996) (reviewing superior court's order of supervised visitation under abuse of discretion standard). We review a trial court's decision on a motion to modify child support for an abuse of discretion. *See Yerrington v. Yerrington,* 933 P.2d 555, 557 n. 3 (Alaska 1997).

*Custody.* Trial courts are instructed to award child custody on the basis of the best interests of the child. AS 25.20.060, AS 25.24.150(c). The superior court found that the evidence weighed in favor of an award of custody to Hoff. The court made findings on each of the statutory factors relevant to custody. The findings squarely supported an award of custody to Hoff. In particular, there was credible evidence to support the superior court's findings that Monette was unable to meet Tommy's psychological and emotional needs (and may have posed a danger to Tommy), including the testimony of Dr. Lazur; the two Guardians ad Litem (GALs); Monette's former husband; Hoff; and Tommy's paternal grandfather. The superior court was best situated to weigh the evidence before it and its findings are well-supported by the record. *See Holl,* 815 P.2d at 380; *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1190 (Alaska 1987). The court's factual findings are not clearly erroneous, and it did not abuse its discretion in awarding sole legal custody to Hoff. The evidence upon which Monette relies did not require the superior court to do otherwise.

Monette contends that the superior court inappropriately relied on the testimony of former GAL Judith Rich, and gave too little weight to the evidence given by Monette's expert, Dr. Smith. Assessment of witness credibility is left to the discretion of the superior court. *See Hanlon v. Hanlon,* 871 P.2d 229, 232 (Alaska 1994). Thus, the weight to be given to evidence elicited during Rich's direct and cross examination was a matter of discretion for the superior court. The superior court may have concluded that Dr. Smith's psychological evaluation was unpersuasive because Monette gave Dr. Smith misleading and incomplete information, and because he never saw Tommy individually or observed Tommy and Monette together. The court was not obliged to assess the evidence the way Monette would. We therefore affirm on the question of custody.

*Visitation.* We have stated that "while unrestricted visitation is the norm, supervised visitation can be required when the court makes findings which specify why unsupervised visitation is contrary to the best interests of the child." *J.F.E.,* 930 P.2d at 409. The appropriate type of visitation was a disputed matter turning on witness credibility. *See Hanlon,* 871 P.2d at 232. Credible evidence supported the court's concern that Monette posed a risk of abduction and flight. For example, GAL Pamela Montgomery stated that "Ms. Monette's history of secreting away her daughter from [the daughter's father], as well as her conduct of not telling Mr. Hoff exactly where the child was here in Alaska for a period of time does cause concern that she presents a risk of abduction of the child."

We also note that the need for supervision goes beyond the risk of abduction and flight. Dr. Lazur testified that "[u]nsupervised and unrestricted time . . . could cause serious and irreparable damage to the child." The superior court expressly found that "unsupervised contact between Linda Monette and Thomas Wade–Hoff could result in psychological damage to the child," and that "Thomas has reacted adversely, showing signs of distress and deteriorated behavior when exposed to Linda Monette even for relatively short periods of visitation." Given these findings,

which are not clearly erroneous, the superior court did not abuse its discretion by awarding only supervised and limited visitation to Monette.

■ The superior court orally stated that the visitation schedule should remain in effect for three years, at which point Monette may be entitled to a modification if she can show that there has been a change in circumstances. We conclude that this was appropriate. The superior court recommended that Monette seek psychological counseling and enroll in parenting classes. Should Monette participate in such counseling and classes, she may cease to pose any risk of harming or abducting Tommy. Whenever Monette has demonstrated that she no longer presents such risks, she can ask the court to revisit the requirement of supervision and to create a plan for eventually eliminating that restriction. Although we prefer that a court ordering supervised visitation also specify a plan by which unsupervised visitation can be achieved, Monette's condition and behavior are not so easily remedied that it was mandatory for the court to adopt a specific plan.

■ *Child Support.* In November 1994 CSED calculated Monette's support obligation as $370 per month. Monette filed a motion in the superior court custody proceedings to modify this obligation. She argued that CSED had miscalculated the support obligation in the first place, and that a medical condition prevented her from working. She affied that she had failed to respond to CSED's initial inquiries as to her income, and that CSED had erroneously imputed $22,174.62 as income to her in the absence of correct information. In support of her motion, Monette attached her 1994 tax return that showed her income to be $2,439 rather than the $22,174.62 calculated by CSED, and a physician's chart indicating that Monette had developed "mild carpal tunnel syndrome." At a November 1995 hearing on Monette's motion, Superior Court Judge Brian C. Shortell stated that Monette's motion to modify was ill-taken, that CSED's calculation was valid, that Monette had made no effort to correct CSED's alleged miscalculation, that there was no mate-

rial change in circumstances, and that Monette's testimony regarding her inability to work based on a medical condition was not believable. Accordingly, Judge Shortell denied the motion. After the subsequent child custody trial, Judge Wolverton's Findings of Fact and Conclusions of Law stated that "Linda Monette is currently employed and has the capability of continued employment at the same rate. She therefore has the ability of paying child support at the same rate which she has been paying during the pendency of this action—$370.00 per month."

Judge Shortell's oral findings from the November 1995 hearing and Judge Wolverton's written findings from the 1997 trial do not show how either judge determined Monette's child support obligation. The superior court may have applied a deferential standard of review of CSED's prior calculation of child support and adopted the support amount as calculated by CSED because the court found that there was no change in circumstances. If that was what happened, it would have been error, because the superior court could not simply adopt or deferentially review an administrative decision by CSED. This was a judicial custody and support proceeding, not an administrative appeal from CSED's decision. But the superior court may have conducted an independent review of Monette's finances and determined that she should pay $370 in monthly child support. Because the findings do not reveal clearly whether there was a de novo determination of the support obligation, we remand for clarification.

On remand, the superior court should confirm that it previously considered Monette's child support obligation de novo. If it did not, it should now do so. The superior court is free to hear additional evidence regarding Monette's finances and should make appropriate findings as to the child support award. *See Terry v. Terry,* 851 P.2d 837, 838 (Alaska 1993) (holding that trial court abused its discretion in failing to disclose the actual numbers it used to calculate the child support award).

For the reasons stated above, we AFFIRM the custody and visitation awards, and

REMAND for clarification of the child support award.