Kristine M. FARDIG, n/k/a Kristine M. Owen, Appellant,

v.

Earle FARDIG, Appellee.

No. S–10028.

Supreme Court of Alaska.

Oct. 4, 2002.

Rehearing Denied Nov. 4, 2002.

---

Kristine M. Owen, pro se, Bakersfield, California, Appellant.

Darryl L. Jones, Law Office of Darryl Jones, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Kristine Owen (formerly Fardig) appeals a modification of custody rights denying her custody of her minor children. She claims that the doctrines of res judicata and collateral estoppel precluded the trial court from

considering her drug abuse. Moreover, she argues that the superior court improperly weighed the evidence in making its decision. The superior court's decision satisfies the appropriate standard of review and is therefore affirmed.

## II. FACTS AND PROCEEDINGS

Kristine Owen and Earle Fardig separated in September 1994. They divorced August 16, 1995. Owen and Fardig had been married for twenty-seven years during which time they had eight children together. Of those children, only three—Anna Fardig, born April 9, 1985; Bethany Fardig, born April 4, 1988; and Edith Fardig, born January 12, 1990—are presently under the age of eighteen. Due in part to evidence of domestic violence by Fardig, Owen was granted custody of the five minor children at the time—the above three plus Sarah Fardig, born March 3, 1980, and Andrew Fardig, born November 24, 1982—and awarded appropriate child support.

In July 1996, approximately ten months after the divorce decree was issued, Fardig moved for a modification of custody, claiming that Owen's substance abuse impaired her ability to care for the children. Based on a report by a custody investigator indicating that Owen "may be abusing alcohol, pain killers and other controlled substances," Superior Court Judge Peter A. Michalski issued an order on December 18, 1996 granting interim custody to Fardig.[1] Owen was ordered to undergo an assessment for drug, alcohol, and narcotics addiction.

Superior Court Judge Sen K. Tan denied Owen's subsequent motion for interim custody on May 7, 1999, although Owen was granted weekend visitation with daughter Edith. At the June 2000 hearing on Fardig's motion to modify custody, the court learned that Owen had moved to California. Judge Tan subsequently entered a final custody decree, giving sole legal and primary physical custody of Andrew, Anna, Bethany, and Edith to Fardig. Only the custody of Bethany and Edith was in dispute, as Owen had agreed that it was best for Andrew and Anna to remain with their father. Judge Tan found that Owen's move to California constituted a substantial change in circumstances. Owen was granted only supervised visitation with the children in Alaska, with the possibility of summer visitation dependent upon a drug and alcohol assessment.

Owen appeals Judge Tan's custody decree, although she now only contests custody of Edith.

## III. STANDARD OF REVIEW

■ We will not reverse the superior court's decision to modify custody unless there has been an abuse of discretion or the controlling factual findings are clearly erroneous.[2] An abuse of discretion is established where the superior court "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[3] A factual finding is clearly erroneous "when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[4] Issues of res judicata and collateral estoppel are questions of law which we review de novo.[5]

## IV. DISCUSSION AND ANALYSIS

### A. The Issue of Owen's Alleged Drug Abuse Is Not Barred by Res Judicata or Collateral Estoppel.

■ Fardig based his motion for modification of child support in part on claims that Owen was abusing drugs. Owen argues that this issue was dismissed with prejudice by Superior Court Judge Rene J. Gonzales at a

---

1. Sarah Fardig, being no longer a minor, was not subject to this order.

2. *Valentino v. Cote*, 3 P.3d 337, 339 (Alaska 2000).

3. *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998).

4. *Id.*

5. *Renwick v. State, Bd. of Marine Pilots*, 971 P.2d 631, 633 (Alaska 1999).

July 21, 1995 domestic violence hearing. However, there is nothing in Judge Gonzales's interim order to support this claim. Moreover, Owen's res judicata and collateral estoppel claims lack merit because consideration of Owen's drug use in the context of a motion to modify custody does not relitigate a past decision. Indeed, Fardig points to Owen's drug abuse as a substantial change in circumstances. In other words, Owen's alleged drug abuse was not being "relitigated."[6]

### B. Judge Tan Had Sufficient Evidence To Find that Owen's Move to California Constituted a Change in Circumstances.

■ Owen contends that Judge Tan should not have placed weight on her move to California in determining custody because neither party raised this issue and because the move was temporary, made for the purpose of helping an ill mother-in-law. A finding of a substantial "change in circumstances" is necessary before a custody modification hearing can be held.[7] Judge Tan listed Owen's move to California as the "substantial change in circumstances" that justified the custody modification hearing. We have previously held that a move to another state constitutes a substantial change in circumstances.[8] Judge Tan commented that although the move was a temporary relocation, it could last for another year to eighteen months.

The evidence before the court was sufficient to support the conclusion that the move was potentially long-term. Due to the fact that Owen was requesting summer visitation, the move could reasonably have been interpreted as less temporary than Owen herself contends. Furthermore, when asked how long she intended to stay in California, Owen, who was participating telephonically at the June 2000 hearing, testified first that it might be one to two years and later stated that she was not sure if she will ever come back to live in Alaska. Consequently, it was not clearly erroneous for Judge Tan to find a substantial change in circumstances meriting a reconsideration of custody.

### C. Judge Tan Had Sufficient Evidence To Support a Change of Custody as Being in the Best Interests of the Children.

■ Owen challenges the allegation of drug and alcohol abuse on the ground that there was insufficient evidence introduced at the June 12, 2000 custody trial to support the allegation and the subsequent change in custody. Owen points to two doctors' letters saying she was not abusing drugs or alcohol and claims that Fardig presented no evidence to the contrary.[9] While Judge Tan did

---

**6.** Owen also asserts that at the July 29, 1996 hearing, Judge Michalski improperly placed the burden of proof on her to show that she did not abuse drugs. Owen is correct that the burden of proving a substantial change in circumstances necessary for custody modification is on the moving parent. *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985). However, the custody investigator's report that preceded the interim custody order essentially provided evidence of Owen's drug abuse. Fardig does not claim to be exempt from the burden of persuasion but insists instead that he satisfied it. The evidence, namely the custody investigator's report, is sufficient to show that Judge Michalski was not clearly erroneous in concluding that there was a strong possibility that Owen abused drugs.

**7.** AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); *see also Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001).

**8.** *House v. House*, 779 P.2d 1204, 1207–08 (Alaska 1989). Owen correctly points to *House* to support the proposition that it can be in the best interests of the child to be in the custody of the parent who is moving out of the state. This, though, does not lend any support to her assertion of custody other than to say that it is a possibility.

**9.** Owen further contends that Judge Tan abused his discretion by failing to give proper weight to a taped conversation in which her son Jon discusses selling marijuana to his father, Earle Fardig. Judge Tan did accept the tapes as evidence, but apparently did not consider this evidence to be sufficient under AS 25.24.140(c)(8) to award custody to Owen over Fardig as being in the best interests of the children. The statute provides as a factor in determining the best interests of the child "evidence that substance abuse by either parent or other member of the household directly affects the emotional or physical well-being of the child." By invoking an abuse of discretion standard in this particular situation, Owen must

find evidence of drug and alcohol abuse, it is clear from his oral findings that this was not the only factor relevant to his decision.

Though the written findings are rather cursory, Judge Tan made extensive oral findings of fact to support his order changing custody from Owen to Fardig.[10] Judge Tan determined the best interests of the children by discussing each of the statutory factors listed in AS 25.24.150(c).[11] The first factor discussed by Judge Tan was the physical, emotional, mental, religious, and social needs of the child. He found that Bethany and Edith, the only children whose custody was in dispute, needed emotional support, a stable home, and unconditional love. For the next factor, the ability of the parents to meet the needs of their children, Judge Tan found that Fardig provided a better environment for the children, noting that Fardig's living situation seemed more stable, that he provided them with sufficient food and clothing, and that he was sending the children to see a therapist. Judge Tan worried that until Owen settled into a more permanent living arrangement, she would not be able to provide the support that the children needed.[12]

■ Judge Tan next noted that because Bethany and Edith were only twelve and ten years old he did not feel it would be appropriate to take their preferences into consideration.[13] Judge Tan found that the factor of love and affection toward the parent was also inconclusive, since each child expressed love and affection for both parents. For the factor of length and stability of living arrangements, Judge Tan found that both of the children were happy living in Anchorage and had a good group of friends here. Judge Tan next found that each parent had a difficult time allowing the children to have an open relationship with the other parent. Judge Tan found that there was insufficient evidence to conclude that either parent had committed domestic violence.

Judge Tan next addressed the drug use by each parent. Judge Tan focused on the fact

show that Judge Tan gave "disproportionate weight to particular factors while ignoring others." *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998). While perhaps Judge Tan might have ordered some sort of drug assessment for Fardig, Judge Tan did not clearly give "disproportionate weight" to the relative drug use of Owen as compared to that of Fardig for reasons that will be discussed below.

10. Judge Tan commented that because the custody investigator did not testify at trial, the custody report relied upon below was used only as background support. Judge Tan stated that he made his decision "based on the evidence that has been presented in court and testified to."

11. The statute provides:

(c) The court shall determine custody in accordance with the best interests of the child under AS 25.20.060—25.20.130. In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

12. A trial judge is not permitted to condition custody on a parent's ability to relocate. *Moeller–Prokosch v. Prokosch*, 27 P.3d 314, 317 (Alaska 2001). However, the impact of any potential move may be taken into consideration by the court in assessing the best interests of the child. *Id.*

13. Owen contends that Edith is of an age where her opinion could be asked as to with whom she wants to live. AS 25.24.150(c)(3) requires that when determining custody the court take into account the child's preference "if the child is of sufficient age and capacity to form a preference." Whether a child is of sufficient age to have a meaningful preference for one parent or the other is a question committed to the discretion of the trial court. *See Jenkins v. Handel*, 10 P.3d 586, 590 (Alaska 2000). Here, a therapist testified that Edith was not mature enough to make a decision about where to live.

that Fardig had been in an eight-month substance abuse program and had attended meetings of Alcoholics Anonymous and Narcotics Anonymous as evidence that he was getting his drug problem under control. Judge Tan chastised Owen for not making similar efforts. Judge Tan considered the two doctors' letters that Owen submitted to be unsworn statements because neither doctor testified at trial. Judge Tan further noted that the letters were unclear about what medications Owen was taking and what testing and drug assessment she was undergoing.[14] Consequently, the trial court found little value in the letters.

Further support for Judge Tan's conclusion can be found in the trial testimony of Janice Bernzott, a therapist who had previously counseled Andrew Fardig and was continuing to counsel Bethany and Edith Fardig at the time of the trial. Bernzott, who has a masters degree in clinical psychology and a nursing degree, testified, based on comments that the children made to her, that she believed that Owen was currently using drugs.[15]

Earle Fardig testified that Owen refused to enter the same treatment program that Fardig had earlier undergone for addiction to prescription drugs; furthermore, Fardig testified that Owen even denied that she had a problem. Andrew Fardig, their son, testified that his mother was very manipulative and frequently seemed to "be on something." Jennifer Fardig, their daughter, testified that her father did not smoke marijuana or abuse alcohol and that he would not let the children smoke cigarettes. In addition, Jennifer related a conversation in which her mother discussed being beaten by her husband, Bob Owen, and using drugs with him. This testimony further supports Judge Tan's finding of possible drug use by Kristine Owen.

Finally, Judge Tan concluded it was in the best interests of Bethany and Edith to be kept together and with their other siblings because of the emotional support that the siblings provided for each other.

In sum, the evidence does not support Owen's claim that Judge Tan's findings on the statutory factors involved in determining the best interests of the children were clearly erroneous.

**D. There Is Evidence in the Record To Support the Trial Court's Finding that Owen's Visits with Her Children Be Supervised.**

Under *J.F.E. v. J.A.S.*, unsupervised visitation by parents is "the norm."[16] A requirement of supervised visitation must be supported by findings that "specify how unsupervised visitation will adversely affect the child's physical, emotional, mental, religious, and social well-being."[17] Bernzott testified that Owen should have unsupervised visits with her children only after a psychological evaluation and drug assessment of Owen and even then only after a transitional therapy period involving both Owen and the girls. When Owen confronted Bernzott with the letter from Dr. Beirne stating that she was not using drugs, Bernzott testified that this was not consistent with statements the children had made to her. Bernzott concluded by stating: "My clinical opinion is that the children would best be served by supervised contact with [Owen]." Although Owen has not previously been required to have supervised visitation with her children, the testimony at trial provides support for Judge Tan's decision to require supervised visitation.

Moreover, we have previously stated that "we prefer that a court ordering supervised visitation also specify a plan by which

---

14. This is not an entirely accurate statement: The letter from Dr. Beirne states that Owen has undergone "periodic urine drug and alcohol testing" and never tested positive. This does not, though, negate the fact that Dr. Beirne did not testify before the court.

15. In addition, Bernzott testified that Fardig participated cooperatively in Andrew's counseling, but that Owen only came to counseling once and

chose not to come back again, despite an invitation to do so. This lends support to the conclusion that Fardig was working toward rehabilitation but Owen was not.

16. 930 P.2d 409, 409 (Alaska 1996).

17. *Id.* at 413–14.

unsupervised visitation can be achieved."[18] Judge Tan outlined such a plan when he directed that Owen undergo a rigorous clinical assessment showing she was clean and sober before he would consider, upon motion by Owen, unsupervised visitation.[19] Consequently, Owen has been provided with a means for regaining unsupervised and summer visitation of Edith should she wish to do so.

## V. CONCLUSION

Owen's res judicata and collateral estoppel claims lack merit because consideration of Owen's drug use in the context of a motion to modify custody does not relitigate a past decision. Owen has failed to demonstrate that the superior court abused its discretion or was clearly erroneous on a factual determination with regard to the modification of custody. Consequently, this aspect of the superior court's decision is AFFIRMED. The requirement of supervised visitation for Owen is supported by evidence at trial and is also AFFIRMED.

BRYNER, Justice, with whom MATTHEWS, Justice, joins, dissenting in part.

I join today's opinion in concluding that the superior court did not abuse its discretion by awarding physical custody of Bethany and Edith to Fardig. But because our case law unequivocally requires express findings explaining the need for supervised visitation, because the superior court failed to comply with this requirement, and because the record establishes a need for specific findings here, I would remand the visitation order and would direct the superior court to specify how Bethany and Edith would be harmed by having unsupervised visitation with their mother, Owen.

In *J.F.E. v. J.A.S.*—decided just five years ago—this court articulated the legal standards that must be met in a private custody proceeding before a court may restrict parental visitation by requiring third-party supervision; we concluded that Alaska law makes unsupervised visitation the norm in such cases and that supervised visitation may be ordered only when the trial court makes express findings specifying why supervision is actually necessary to protect the children's best interests:

[Alaska Statutes] 47.10.084 recognizes in the context of child-in-need-of-aid proceedings that noncustodial parents have certain residual rights and responsibilities including "the right and responsibility of reasonable visitation." AS 47.10.084(c). It follows that a similar residual right of reasonable visitation should exist in private custody proceedings since parents in such proceedings are no less deserving of contact with their children than parents of children whose custody has been committed to the state.

Based on these provisions and on the statutes dealing with child custody, we infer that the best interests of the child standard normally requires unrestricted visitation with the noncustodial parent. Therefore, *an order requiring that visitation be supervised must be supported by findings that specify how unsupervised visitation will adversely affect the child's physical, emotional, mental, religious, and social well-being and the other interests set out at AS 25.24.150.*[1]

Today's opinion silently overrules this precedent by disregarding its unequivocal command that, before imposing a supervision requirement on parental visitation, the trial court must make express findings explaining how unsupervised visits would violate the children's best interests. For the superior court utterly neglected to specify how unsupervised visitation by Owen would adversely affect Bethany's and Edith's physical, emotional, mental, religious, or social well-being;

---

**18.** *Monette v. Hoff*, 958 P.2d 434, 437 (Alaska 1998).

**19.** Both Earle Fardig and Andrew Fardig testified that if allowed to take the children to California, Owen would keep the children there. Flight risk could potentially be a justification for supervised visits. *See Monette*, 958 P.2d at 436.

However, this claim was unsupported by anything other than these vague allegations.

**1.** *J.F.E. v. J.A.S.*, 930 P.2d 409, 413–14 (Alaska 1996) (internal footnotes omitted) (emphasis added).

indeed, though the superior court comprehensively addressed the children's best interests in deciding to award primary physical custody to Fardig, it failed even to mention their best interests in summarily imposing Owen's supervised visitation requirement. Nor does the trial court's discussion of the children's best interests in its custody findings explain its separate and conceptually different decision to require supervised visitation. Although the custody findings do explain why the court believed Fardig to be a better custodial parent than Owen, they contain nothing akin to a finding that unsupervised visitation would actually harm either child or adversely affect the children's best interests.

Yet this court's opinion glosses over this glaring deficiency, as if J.F.E.'s holding meant nothing at all: without any attempt to justify the absence of express findings (indeed, without even acknowledging the superior court's failure to make J.F.E. findings), the opinion proceeds to tackle the fact-finding problem on its own, combing the record for traces of evidence that *might have* supported a supervised visitation requirement; and after considerable stretching and straining, the most the court can say is that Bernzott's expert testimony "provides support for" the superior court's decision.[2] But this minimal appellate finding of fact hardly fills the void left by the trial court's failure to make appropriate findings, for it lands well short of the mark established in J.F.E., which demands "findings that specify how unsupervised visitation will adversely affect the child's physical, emotional, mental, religious, and social well-being and the other interests."[3] Thus, today's opinion simply adds this court's own name to the list of other participants in the case—Fardig, Bernzott, and the superior court judge—who have been unable to comply with J.F.E.'s standard. And this court's failure is especially glaring, since the standard it violates is its own creation.

To be sure, the trial court's failure to make express findings in compliance with J.F.E. might be excused were it clear that Bernzott's testimony had a solid factual basis, that her testimony showed how unsupervised visitation would harm Bethany and Edith, and that the trial court actually found this testimony convincing. But the record supports none of these inferences. Bernzott's testimony that the children's best interests would be served by unsupervised visitation was itself wholly conclusory. It addressed none of the statutory best interests factors and offered no meaningful explanation to support Bernzott's "expert opinion"; moreover, when asked to describe her factual basis for concluding that Owen suffered from substance abuse problems, Bernzott could point to only two equivocal statements by Edith, which Bernzott "interpreted" as references to drug use or impairment.[4]

Notably, the superior court neither expressly nor implicitly accepted Bernzott's testimony as credible proof that Owen suffered from a substance abuse problem or posed a danger to her children. To the contrary, the court's oral comments demonstrate that it found insufficient evidence to allow any meaningful conclusions on these issues. In evaluating the statutory best interests factor of parental drug abuse for purposes of awarding custody, for example, the court noted:

2. Opinion at 14–15.

3. 930 P.2d at 413–14.

4. Over Owen's understandable but unsuccessful hearsay objection, Bernzott described two statements by Bethany as her basis for believing that Owen had a substance abuse problem:

> Bethany reported to me that "mom had a lot of medicine" and that "mom hurt a lot" as far as drug use. There was an occasion that Bethany also reported to me she asked her mom to stop the car because she believed her mom was—'drunk'—was the word Bethany used. I inter-

preted that to be impaired in some way. And Bethany asked her mom to take her back home. She would not continue in the car.

Evidently, these statements were made to Bernzott sometime shortly after she began seeing Bethany and Edith in February 1999—more than a year before the custody hearing. Bernzott gave no further details and failed to describe the context in which these statements were made or to specify when the reported incidents were alleged to have occurred. When Owen challenged the accuracy of Bernzott's claim that Bethany made these statements, Bernzott quickly altered her testimony and attributed the statements to Edith instead.

Ms. Owen presents me with a tough problem. So far, I have two letters—two letters from two doctors. [The] first is by Dr. Mike Beirne.... I don't know what underlies it. I tell you what my problem is: both doctors did not testify here in person. I have essentially an unsworn statement by 2 doctors that ... don't tell me very much. I don't know exactly what [each doctor] has done. What I find critically lacking here is anybody who can get on the stand and testify and tell me *one way or the other*, you know, what medications Ms. Owen is on, what sort of testing procedures she has undergone, what sort of assessment, and *what is essentially the situation with the drugs.*[5]

Far from concluding that credible evidence of drug use by Owen existed, then, the trial court expressly acknowledged that the evidence on this issue was speculative. But the court nonetheless faulted Owen for failing to disprove these speculative allegations:

Ms. Owen says, "Oh well, that's all speculation." Well, sometimes the best way to refute speculation is to have somebody come into court to state under oath what's going on. That's credible, reliable evidence. So although I see those letters, I'm not going to put much credibility into [them] because I don't know exactly the contours of those things.

The court returned to this theme later: in imposing Owen's supervised visitation requirement, despite its express recognition that the evidence of Owen's substance abuse was speculative, the superior court took the view that Owen should be restricted to supervised visitation unless and until she affirmatively proved that she would not pose any danger:

I have considered the issue of visitation. I'm going to essentially allow visitation after these conditions have been met: Ms Owen, I know you don't want to hear this. You think Judge Michalski dealt with this question. But I tell you what. It hasn't been dealt with ... to my satisfaction. I want a drug and alcohol assessment. Okay. I want somebody telling me that they have assessed you. And you have

been assessed clean and sober. That you don't need any drug treatment. It's been years. I haven't really seen any proof that that has occurred. You send me two letters. I'm telling you now they are insufficient. You've gotta do better. If you think you're really clean, it should be very easy. It shouldn't take you very long to submit that evidence to the court. Okay. Then we'll do a follow up and I'll decide what sort of visitation you shall have. Because until that time, I'm going to essentially restrict you to supervised visitation.

Hence, the superior court decreed a strict regime of supervised visitation not because it was persuaded by credible evidence that supervised visitation was needed to prevent harm to the children's best interests, but rather because Owen had failed to prove her own innocence; she had failed to convince the court that unsupervised visitation would *not* harm her children. As Judge Tan himself tellingly put it, "What I find critically lacking here is anybody who can ... tell me one way or the other ... what is essentially the situation."

In my view, this finding strongly suggests that the superior court restricted Owen to supervised visitation because it believed that she bore the burden of overcoming speculative assertions of possible drug use by affirmatively proving her fitness to engage in risk-free unsupervised visitation. Even though Owen had parented eight children over a marriage spanning some twenty-seven years and had not been credibly shown to have caused them any actual harm, the trial court required her to prove to its satisfaction that unsupervised visitation would be in her children's best interests. Yet this requirement cuts directly against our decision in *J.F.E.*, which adopts unsupervised visitation as the norm in the absence of affirmative proof to the contrary and categorically precludes restrictions imposing supervised visitation unless the trial court expressly specifies how unsupervised visitation would adversely affect the children's best interests.

In summary, then, nothing in the record excuses the trial court's failure to comply

5. Emphasis added.

with J.F.E.'s requirement of express findings focusing on the need for supervised visitation. Because the trial court failed to specify any adverse effect that unsupervised visitation might actually have on the children's best interests, and because it appears instead to have mistakenly shifted to Owen the burden "to refute speculation," I would vacate the supervised visitation requirement and remand for reconsideration, allowing the restriction on Owen's visitation rights to be reimposed only upon the entry of findings in compliance with J.F.E.'s standards.

I thus dissent from this court's decision affirming the supervised visitation order.