NOTICE

*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MATTHEW P., | ) | |
| | ) | Supreme Court No. S-15735 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-10-00843 CI |
| v. | ) | |
| | ) | O P I N I O N |
| GAIL S., | ) | |
| | ) | No. 7037 – August 28, 2015 |
| Appellee. | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Anthony M. Sholty, Faulkner Banfield, P.C., Juneau, for Appellant. Notice of nonparticipation filed by Paul H. Grant, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.
FABE, Chief Justice, with whom MAASSEN, Justice, joins dissenting in part.

## I. INTRODUCTION

Following their separation two parents initially shared physical custody of their daughter. But after a domestic violence incident, the superior court awarded the mother sole legal and primary physical custody, while allowing the father telephone calls and supervised visitation. The father subsequently filed a motion to modify custody,

seeking a return to equal physical custody. The superior court denied this request, concluding that the daughter's emotional needs and the father's unwillingness to foster a strong relationship between the mother and daughter supported the continuation of supervised visitation. Because the superior court did not abuse its discretion in considering the child's best interests, and because it articulated a plan through which the father could achieve unsupervised visitation, we affirm.

## II. FACTS AND PROCEEDINGS

Matthew P. and Gail S.[1] were married and had one child together, Valerie, born in 2002. The couple separated in August 2011, and pursuant to a joint custody agreement the parents had joint legal custody of Valerie and shared physical custody under a "week-on/week-off" arrangement.

In March 2012 Matthew broke the windshield of Gail's car with his fist, which the superior court found to be an incident of domestic violence. Gail moved to modify custody, and after an evidentiary hearing the superior court concluded it was in Valerie's best interests that Gail be awarded sole legal and primary physical custody. The court required Matthew's visitation with Valerie to be supervised, but allowed him to have unmonitored phone calls with her. The court expressly ordered that "[n]either parent shall make disparaging comments about the other parent" during phone calls with Valerie.

Matthew moved to modify custody in March 2014, seeking a return to shared physical custody.[2] He argued that his completion of an intervention program for batterers constituted a material change in circumstances and alleged that Valerie had

---

[1] We use pseudonyms for all family members.

[2] Matthew had also filed an earlier motion to modify custody in April 2013, which the superior court denied. The disposition of this motion is not on appeal.

"been experiencing significant behavioral problems in school" and was "troubled in her current situation." The superior court held an evidentiary hearing in October 2014, at which both parties were represented. The court found that no substantial change in circumstances had occurred justifying a change to Valerie's custodial status, and Gail retained sole legal and primary physical custody of Valerie. Nonetheless, the court proceeded to consider the statutory best-interests factors.[3]

The superior court concluded that tightening the restrictions on Matthew's interactions with Valerie was in her best interests. The court ordered that phone calls between Matthew and Valerie be limited to one call per day, not to exceed 10 minutes in length, on days when Matthew did not have visitation. The court granted Gail permission to monitor these calls so long as she did not tape-record, memorialize, "negatively impact," or "unnecessarily intrude" on Valerie's conversations with Matthew. Finally the court ordered Matthew to "obtain a full and complete independent psychological evaluation by a licensed clinical psychologist."

Matthew appeals this order, seeking a return to equal custody.[4]

## III. STANDARD OF REVIEW

"The [superior] court has broad discretion in child custody decisions."[5] "We will reverse the superior court's decision when 'the record shows an abuse of

---

[3]    *See* AS 25.24.150(c) (requiring the court to "determine custody in accordance with the best interests of the child" and providing nine factors the court must consider).

[4]    Gail did not participate in the appeal.

[5]    *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014) (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005)) (internal quotation marks omitted).

discretion or if controlling factual findings are clearly erroneous.' "[6] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[7] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[8]

## IV.   DISCUSSION

As an initial matter, Matthew argues that the superior court erred by finding "that there [had] not been a significant change of circumstances which would justify a review or change of [Valerie's] custodial status." It is indeed true that "modification of custody requires a showing that there has been a substantial change in circumstances."[9] But such a change is merely a threshold requirement, and the superior court must still consider the ultimate question of the child's best interests before modifying custody.[10] Here, despite finding no substantial change in circumstances, the court nevertheless analyzed the statutory best-interests factors. The court ultimately concluded that the requested change in custody was not in Valerie's best interests, so it is unnecessary for

---

[6]     *Id.* (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996)).

[7]     *Id.* (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

[8]     *Id.* (quoting *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)) (internal quotation marks omitted).

[9]     *Bagby v. Bagby*, 250 P.3d 1127, 1129 (Alaska 2011); *see also* AS 25.20.110(a).

[10]     *See* AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award *and* the modification is in the best interests of the child." (emphasis added)).

us to determine whether there was a substantial change in circumstances. The dispositive issue was Valerie's best interests — not the alleged change in circumstances.

### A. The Superior Court Did Not Abuse Its Discretion By Concluding That Shared Physical Custody Was Not In Valerie's Best Interests.

"The court shall determine custody in accordance with the best interests of the child," taking into account the statutory factors detailed in AS 25.24.150(c).[11] Here the superior court addressed each of the statutory factors, but it focused primarily on Valerie's emotional needs and each parent's respective willingness and ability to facilitate a close and continuing relationship between Valerie and the other parent. Matthew's appeal likewise focuses on these two factors.

#### 1. Valerie's emotional needs

The superior court found that Matthew was neglectful of Valerie's emotional needs. The court was particularly concerned about statements Matthew made to Valerie about Gail and the custody dispute and the effect of these statements on Valerie's "emotional welfare."[12] The court also credited the testimony of Dr. Joanne Solchany, an expert on child psychology and parental alienation.

Based on an in-person psychological evaluation, Dr. Solchany diagnosed Valerie with traumatic stress disorder, which she described as occurring when a person is "exposed to an actual or . . . threatened trauma." Dr. Solchany opined that for Valerie,

---

[11]     AS 25.24.150(c).

[12]     The court highlighted a text message that Matthew appears to have sent Valerie in August 2013 that read, "[Valerie], [I] was driving home when you called and couldn[']t answer the phone. I don[']t like the message you left me. It shows exactly what a negative influence your mother has on you. I don[']t need [a] message like that." As the judge noted, the court had already issued an order expressly prohibiting the parties from disparaging the other parent. Matthew does not mention this issue on appeal.

this trauma was her parents' conflict, which caused an incongruence between Valerie's perceptions and reality. Dr. Solchany also thought Valerie was at risk for borderline personality disorder.

Dr. Solchany expressed concern that Valerie "idolized her dad" and "villainized" her mother. Dr. Solchany testified that Valerie "sees her mom as the bad guy" and "that's mostly because that's what Dad tells her in one way or another." According to Dr. Solchany, Valerie blamed Gail for the broken windshield incident; Valerie told Dr. Solchany that "it was her mom who caused the problem, that her dad just did everything accidentally[,] and [that] her mom threw her dad in jail." But besides generally characterizing her mother as "mean" and not giving her what she wanted, Valerie could not articulate specific examples of Gail's behavior that were objectionable. And notably, Dr. Solchany reported, when Valerie returned to the waiting room to reunite with Gail after the evaluation, Valerie "was extremely affectionate." Dr. Solchany characterized Valerie's statements about and behavior toward Gail as "red flags."

Accordingly, Dr. Solchany recommended against a return to split physical custody, stating that such an arrangement would be "extremely difficult, if not damaging, to [Valerie]." Dr. Solchany also suggested that text messaging between Matthew and Valerie be monitored and that the court place time and length limitations on their phone calls. Dr. Solchany testified that overly long phone calls create the danger that a parent will use his or her child "as a peer."

Matthew takes issue with the superior court's reliance on Dr. Solchany's testimony. He asserts that Dr. Solchany's failure to observe his interactions with Valerie casts doubt on the credibility of her opinions and recommendations, claiming that such observation was an integral part of her stated protocol. But Dr. Solchany never stated that such observation was necessary for her to reach an informed assessment. The

statement Matthew cites indicated that her typical protocol "*includes* meeting with the child, each parent, and then observ[ing] . . . each parent-child dyad or the family, *as the situation calls for*." (Emphasis added.) And she repeated during cross-examination that her protocol depended on the situation.

Moreover, Dr. Solchany was not concerned about the strength of the bond between Matthew and Valerie but about Matthew's statements to Valerie about Gail. And to the extent that Matthew spoke inappropriately about Gail or otherwise involved Valerie in the custody dispute, it seems unlikely that he would have made such comments in the presence of a third party such as Dr. Solchany. As a result, we see little relevance in Dr. Solchany's failure to personally observe Matthew and Valerie's interactions.

Matthew also faults the superior court for crediting the testimony of Sylvia Kidd, a licensed professional counselor who provided therapy to Valerie "off and on since 2010." Kidd recommended against returning to split physical custody, suggesting that the court maintain supervised visitation and allow monitoring of Matthew and Valerie's phone calls and text messages. Matthew appears to argue that Kidd demonstrated bias against him by previously testifying that she had taken precautions for her safety out of concern about Matthew's potential reaction to court-imposed restrictions on his custody. But Kidd explained in her testimony that she "encounter[ed] a lot of people who . . . could possibly be a threat to [her]" in her professional capacity, and that these precautions did not demonstrate bias against Matthew. Matthew presents no further evidence of Kidd's alleged bias, and in any event, "[i]t is the function of the trial court, not of this court, to judge witnesses' credibility . . . ."[13]

---

[13] *James R. v. Kylie R.*, 320 P.3d 273, 279 (Alaska 2014) (quoting *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010)) (internal quotation marks omitted).

In addition to criticizing the superior court's reliance on the testimony of Dr. Solchany and Kidd, Matthew presents a number of other arguments regarding the superior court's analysis of Valerie's emotional needs. None compels a decision in Matthew's favor.

First Matthew asserts that the court ignored favorable testimony about Matthew's interactions with Valerie from witnesses with "first-hand knowledge of [their] relationship." He points out that three individuals who supervised his visitation with Valerie all praised Matthew's parenting skills and testified that he never made negative comments about Gail in Valerie's presence. But by Matthew's own admission, the visitation supervisors were his personal friends, and it was within the superior court's discretion to weigh each witness's credibility.[14] Moreover, even assuming that the visitation supervisors testified accurately about their observations of Matthew and Valerie's interactions, the court could reasonably have concluded that Matthew made negative comments about Gail to Valerie in private telephone conversations or text messages.[15]

---

[14]     *Id.* ("It is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."). On appeal Matthew takes issue with a statement made by the guardian ad litem (GAL) in cross-examining one of the visitation supervisors. According to the GAL, this supervisor had previously relayed to her an incident in which "[Valerie] began to tell [Matthew] something she had done with her mother[,] and [Matthew] cut her off stating that he didn't want to hear her talk about her mother on his time." Matthew contends that this was a misstatement and that he was merely cutting off Valerie's negative comments about her mother. But it was the superior court's role to evaluate the witness's credibility in light of the GAL's questions during cross-examination.

[15]     Under the terms of the prior court order, Matthew's telephone conversations with Valerie were unmonitored, and according to Gail, Valerie would sometimes delete her text messages.

Next Matthew claims the superior court gave insufficient weight to an affidavit from Rachel Woods, a licensed clinical social worker who provided Valerie with family and group therapy. Woods attested that, based on her observations of Valerie and Matthew, there was no need for visitation to be supervised, and she opined that the supervision requirement had harmed Valerie by making her "more resistant to talking about painful feelings [and] very restrained about what she shares concerning sadness and anger." But Matthew did not call Woods to testify at the evidentiary hearing. And even if Woods had testified, the superior court would have had discretion to weigh her opinion against the conflicting expert testimony offered by Dr. Solchany.[16]

Matthew likewise claims that the court gave inadequate consideration to the custody investigator's report, which recommended that Matthew and Gail share physical custody of Valerie under a "week on week off schedule." But as we have previously explained, "custody investigators are simply expert witnesses and . . . their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses."[17] "Because custody investigators' recommendations are granted no particular deference, trial courts are free to reject those opinions provided that 'the evidence as a whole supports the court's decision.' "[18] It was within the superior court's discretion to reject the custody investigator's recommendation in light of Dr. Solchany's expert testimony.

---

[16] *See Ebertz v. Ebertz*, 113 P.3d 643, 647 n.13 (Alaska 2005) ("The weight to be given to expert testimony is within the province of the trier of fact." (alteration omitted) (quoting *State v. Phillips*, 470 P.2d 266, 272 (Alaska 1970)) (internal quotation marks omitted)).

[17] *Id.* at 647.

[18] *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1159 (Alaska 2008) (quoting *Ebertz*, 113 P.3d at 648).

Finally Matthew argues that Valerie's mental health issues arose after the imposition of supervised visitation and were caused by his "sudden removal" from Valerie's life. But besides his own testimony, Matthew offered no other evidence for this claim, and Dr. Solchany's expert testimony directly rebutted it. Although Dr. Solchany admitted that she did not know exactly when Valerie's mental health problems developed, Dr. Solchany testified that the institution of supervised visitation "would not have that kind of an impact on a child" unless the visitation supervisor was "terrible."

For these reasons, the superior court's evaluation of Valerie's emotional needs was not an abuse of discretion.

## 2. Each parent's respective willingness to allow a "close and continuing" relationship between Valerie and the other parent

The superior court found that an additional factor also favored Gail's continued primary custody: "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[19] The court observed that Gail "recognizes the need that [Valerie] . . . have contact with her dad" and would take steps to ensure that happened. But the court found "the contrary" was true for Matthew, citing his August 2013 text message to Valerie.[20] The court also noted Kidd's testimony that one of the parents had told Valerie about the court proceedings, and reasoned that based on the way the statement was delivered, it was more likely to have been Matthew.[21]

---

[19] *See* AS 25.24.150(c)(6).

[20] *See supra* note 12.

[21] According to Kidd, "[Valerie] said she should be able to use her cell phone whenever she wants because her dad said the judge said that [her] mother can't ever take her phone away . . . ."

Matthew argues that this factor favored a return to shared physical custody, claiming that Gail had failed to encourage a relationship between him and Valerie. For instance, Matthew alleges that Gail monitored Valerie's phone calls with him, confiscated Valerie's phone, and "refus[ed] to let [Valerie] call her father." But the only support for these allegations in the record is Matthew's own testimony, and in light of such scant evidence, the superior court could reasonably have discounted this claim.

Matthew also notes that Gail replaced the locks on her home after Valerie accidentally took Gail's keys to Matthew's home on a supervised visit. Gail confirmed this, explaining that she changed the locks to protect herself. But the superior court did not abuse its discretion by concluding that the evidence of Matthew's communications to Valerie about her mother and the court proceedings outweighed Gail's conduct in response to this incident. Given Matthew's past incidence of domestic violence, it was not unreasonable to give little weight to the change in locks.

After evaluating the record, we conclude that the superior court's assessment of each parent's respective willingness to foster a relationship between Valerie and the other parent was reasonable. The superior court did not abuse its discretion by determining that a return to shared custody was not in Valerie's best interests.

## B. The Superior Court Adequately Articulated A Plan Through Which Matthew Could Achieve Unsupervised Visitation.

We have previously indicated that "absent a compelling reason to the contrary that is supported by the record, the court must establish a plan or criteria for ending the supervision requirement."[22] Matthew argues that the superior court erred by failing to establish such a plan. We disagree. The superior court fulfilled this

---

[22] *Yelena R. v. George R.*, 326 P.3d 989, 1003 (Alaska 2014).

requirement by outlining three conditions that need to occur before the court would consider unsupervised visitation: (1) that Matthew "engage[] with a therapist and show[] [the court] . . . that in fact he . . . is getting or has gotten better"; (2) that there be no further reports of Matthew conveying "negative information" about Gail to Valerie; and (3) that supervised visitation in fact occur.

Matthew argues that this plan was "vague at best." Specifically he contends that because he has never received a mental health diagnosis, it is unclear what must be resolved through therapy. But in its written order, the court explicitly required Matthew to "obtain a full and complete independent psychological evaluation by a licensed clinical psychologist."

In her dissent, Chief Justice Fabe observes that the superior court's instructions that Matthew obtain a psychological evaluation and show that he "has gotten better" lacks clear benchmarks. It may be true that the superior court could have been more precise in articulating what it expected Matthew to do in order to remove the requirement for supervised visitation, but a solution to this problem is for Matthew to actually obtain a psychological assessment, and if the psychologist is unclear about what issues the court wants addressed, Matthew should move the court for clarification. And, of course, if the assessment reveals Matthew has no mental health issues requiring treatment or counseling, then — assuming he complies with the court's other requirements — he can move the court for unsupervised visitation.

Matthew also claims the court ordered him to do "whatever he can to see his daughter" — a requirement he finds unreasonable because prior visitation supervisors are no longer available. But Matthew misconstrues the court's instruction. The court did not order Matthew to take advantage of each available window for supervised visitation. Instead, the court merely expressed concern that Matthew "ha[d] not had visitation [during the] six weeks" leading up to the custody hearing and instructed Matthew to

resume visitation. Furthermore, a parent's difficulty in arranging for visitation supervisors would not compel a superior court to lift a supervision requirement, as the best interests of the child may nonetheless justify such a condition.[23]

Finally Matthew asserts that any reports of him giving Valerie "negative information" about her mother will merely be third-parties' interpretations of Valerie's own comments. While this may be true, it would be within the superior court's discretion to weigh this evidence as part of a subsequent custody modification proceeding.[24]

For these reasons, we conclude that the superior court adequately articulated a plan through which Matthew could achieve unsupervised visitation.

## V.   CONCLUSION

We AFFIRM the superior court's order denying Matthew's motion to modify custody.

---

[23]    *See, e.g.*, *Fardig v. Fardig*, 56 P.3d 9, 14 (Alaska 2002) (upholding a superior court's decision to order supervised visitation as supported by evidence in the record, including testimony regarding the children's best interests); *see also Limeres v. Limeres*, 320 P.3d 291, 300 (Alaska 2014) ("An order requiring supervised visitation 'must be supported by findings that specify how unsupervised visitation will adversely affect' the child's best interests." (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 413-14 (Alaska 1996))).

[24]    *See Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014) ("The trial court has broad discretion in child custody decisions." (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005)) (internal quotation marks omitted)); *Knutson v. Knutson,* 973 P.2d 596, 599-600 (Alaska 1999) ("It is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.").

FABE, Chief Justice, with whom MAASSEN, Justice, joins, dissenting in part.

We have long held that it is "the norm" for a parent to have unrestricted, unsupervised visits with his child.[1] Only last year we held that even where supervised visitation is temporarily required, "absent a compelling reason to the contrary that is supported by the record, the court must establish a plan or criteria for ending the supervision requirement."[2] But for almost two and one-half years, Matthew P. has only been able to visit his daughter Valerie if they are accompanied by a supervisor "acceptable to both parties," which has interfered with and reduced his parenting time.[3] And because the superior court has never identified any benchmarks by which Matthew might achieve unsupervised visits, there is no end in sight. In my view, the superior court's failure to establish a concrete "plan by which unsupervised visitation can be achieved"[4] amounts to an abuse of discretion.

Our cases demonstrate that courts can only deviate from establishing a concrete plan by which a parent can achieve unsupervised visits for truly compelling reasons. Last year's decision in *Yelena R. v. George R.*[5] proves the point. There, we held that the superior court abused its discretion when it did not provide a plan toward unsupervised visits for a mother even after she improperly removed the children from

---

[1]    *J.F.E. v. J.A.S.*, 930 P.2d 409, 409 (Alaska 1996).

[2]    *Yelena R. v. George R.*, 326 P.3d 989, 1003 (Alaska 2014).

[3]    Matthew testified that he has had difficulty identifying a consistently available supervisor since Gail removed Valerie from the Catholic Community Services program, and as a result he has not been able to see Valerie as often as the visitation plan anticipates.

[4]    *Rodvik v. Rodvik*, 151 P.3d 338, 345 (Alaska 2006) (quoting *Fardig v. Fardig*, 56 P.3d 9, 14-15 (Alaska 2002)).

[5]    326 P.3d 989 (Alaska 2014).

Alaska and took them to Massachusetts.[6] If it was an abuse of discretion not to create a plan for unsupervised visits for a mother who improperly took her children across the continent, it was all the more so an abuse of discretion not to create a plan here, where the superior court's dissatisfaction with Matthew's parenting was much more nebulous.[7]

A survey of our prior cases indicates that trial judges have accompanied the requirement of supervised visitation with concrete plans for achieving unsupervised visits for parents who have displayed behavior much more troubling than Matthew's. We have approved a superior court's plan toward unsupervised visits for a father who "was verbally abusive, drank heavily, struck the children," assaulted his wife, and "refused to return the children after his visitations on multiple occasions"; the plan was based on "the findings of [a psychological] evaluation and [the parent's] follow-through on any recommendations."[8] We have also approved a plan for achieving unsupervised visits for a mother who refused to enter addiction treatment and whose daughter testified that she used drugs, noting that such a plan "provided [the mother] with a means for regaining unsupervised and summer visitation of [her daughter] should she wish to do so"; the plan required that the mother complete "a rigorous clinical assessment showing she was clean and sober."[9] And even when we did not initially require "a specific plan"

---

**6**      *See id.* at 1000, 1002-03.

**7**      The superior court faulted Matthew for being "very self-contained," a trait the court worried Valerie "thinks she should be portraying." The superior court was also "convinced that [Matthew was] giving [Valerie] information he shouldn't be giving her" and "somehow offering negative information about her mother to her." And the court believed that the relationship between Matthew and Valerie was "not healthy" because "she sees herself as a care giver for her father."

**8**      *Rodvik*, 151 P.3d at 341, 345.

**9**      *Fardig*, 56 P.3d at 15.

toward regaining unsupervised visits for a mother with a "history of secreting away her daughter from [the daughter's father], as well as . . . not telling [the father] exactly where the child was here in Alaska for a period of time,"[10] we directed that when she had participated in counseling and classes to eliminate her risk of harming or abducting her child, "she [could] ask the court to revisit the requirement of supervision and to create a plan for eventually eliminating that restriction."[11]

Here, Matthew has not exhibited any behavior as extreme as the parents above who received the benefit of a concrete plan toward unsupervised visits. There is no evidence that Matthew has a problem with substance abuse. The superior court acknowledged that Matthew had completed a state-certified batterer intervention program after breaking Gail's car window when she was not in the vehicle. And no party has alleged that Matthew poses a flight or abduction risk. Yet unlike in our prior cases, the superior court has not told Matthew what he must do to gain the ability to visit his daughter without a supervisor.

Contrary to the court's reading, the superior court did not identify a specific plan by which Matthew could move to unsupervised visits — a conundrum which has existed for nearly two and one-half years. The superior court's written order did direct Matthew to "obtain a full and complete independent psychological evaluation by a licensed clinical psychologist," but it did not indicate any connection between completing that requirement and a change in the visitation order. Similarly, the superior court referenced the possibility of reconsideration if "there are no longer any reports of negative information that flow[s] from [Matthew to Valerie]," but it did not explain how

---

[10]    *Monette v. Hoff*, 958 P.2d 434, 436 (Alaska 1998) (first alteration in original).

[11]    *Id.* at 437.

Matthew can meet this goal, given that the last such "report" was more than a year earlier. The superior court's spoken directions were vague and explicitly couched in the language of "encouragement": the superior court noted that it "encouraged [Matthew] to enter and engage in therapy," and "to engage in visitation with his daughter, and take every minute that he can that's available to him with his daughter," but it specified that it was "not going to direct him doing it, I'm going to encourage him to do that." The superior court also suggested that if Matthew could demonstrate that he "is getting or has gotten better" then "*perhaps* the [superior] court will take a look at it." (Emphasis added.) Yet there is no evidence in the record that Matthew has any psychological difficulties, so it is unclear what he must address in order to "get better."[12] This is not a "plan by which unsupervised visitation can be achieved."[13]

The simple fact is that nobody — not this court, not Gail, and most importantly not Matthew — knows what Matthew needs to do to move toward unsupervised visitation with Valerie. Indeed, the superior court's remarks that "a single parent can raise a child just as well as two parents" and that "sometimes that has to happen for the betterment of the child" suggests that the superior court is comfortable with Matthew *never* achieving unsupervised visitation, in direct contradiction of our caselaw.[14]

---

[12]     The one trained therapist who had personally observed Matthew and Valerie together testified by affidavit that "their interactions are very healthy," that "[t]hey have very good communication with each other," and that Matthew was not "an 'alienating parent.' " This expert also recommended that Matthew be allowed to visit Valerie without supervision and believed that "the supervision has been harmful to [Valerie]."

[13]     *Rodvik*, 151 P.3d at 345 (quoting *Fardig*, 56 P.3d at 14-15).

[14]     The superior court's comparison of this situation to one in which "a single

(continued...)

Because the superior court violated the requirement that "absent a compelling reason to the contrary that is supported by the record, the court must establish a plan or criteria for ending the supervision requirement,"[15] I would hold that in this regard it abused its discretion. Thus I respectfully dissent from the court's conclusion that this aspect of the superior court's decision in this case can be affirmed and would remand the case for the development and articulation of a concrete plan under which Matthew can achieve unsupervised visitation within a relatively short time.

---

[14](...continued)
parent must raise a child and do the best they can, [because] either the other parent has left, or the child's . . . other parent has decided not to take responsibility for raising that child," is particularly puzzling in the context of *rejecting* a parent's request for more involvement with his child.

[15]     *Yelena R. v. George R.*, 326 P.3d 989, 1003 (Alaska 2014).