John M. KOLLER, Appellant,

v.

Kristeen E. REFT, Appellee.

No. S–10088.

Supreme Court of Alaska.

June 13, 2003.

Steve Cole, Cole and Razo, LLC, Kodiak, for Appellant.

Matthew D. Jamin and Karen L. Lambert, Jamin, Ebell, Schmitt & Mason, Kodiak, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

John Koller appeals several of the superior court's rulings and findings concerning the financial ramifications of his custody dispute with Kristeen Reft over their son, Noah. First, he argues that the superior court had no evidentiary support for, nor findings explaining, its interim and prospective child support awards. He alleges that the court erroneously imputed his potential income in violation of Alaska Civil Rule 90.3(a)(4) and then exacerbated the error by increasing his child support obligation under Rule 90.3(c). Second, John contends that the court erred in ordering him to pay Kristeen's attorney's fees, the custody investigator's costs, and the fees for Kristeen's psychological evaluation. We remand the award of prospective child support for additional findings and affirm the remainder of the challenged rulings.

## II. FACTS AND PROCEEDINGS

John Koller and Kristeen Reft had a brief intimate relationship in October 1998. Kristeen lived in the village of Karluk on Kodiak Island, and John lived in Kodiak, where he was finishing a two-year term as a physician. Shortly after John left for a new position in New Mexico, Kristeen learned she was pregnant. Interactions between Kristeen and John became and remained decidedly strained. In May 1999 John took a leave of absence from his position in New Mexico so that he could be present for his son's birth.

Kristeen gave birth to Noah in July 1999. Kristeen resisted any involvement by John with Noah.

Unable to establish an amicable arrangement with Kristeen for seeing his son, John filed a complaint in September 1999 seeking primary custody of Noah. Pursuant to Civil Rule 90.3, John filed a child support guidelines affidavit with his initial pleadings and attached a wage statement from his most recent employer, the U.S. Department of Health and Human Services. These documents showed John's monthly net income to be $4,938.79 and his hypothetical child support obligation to be $987.75 per month.

Kristeen answered the complaint, responding that she should have custody and that John should pay child support. Her child support guidelines affidavit estimated her monthly net income to be $826.19.

Superior Court Judge Elaine M. Andrews presided briefly over the case, holding a status hearing in November 1999 and issuing written orders setting an interim custody schedule, appointing a custody investigator, ordering John to pay the investigator's retainer and initial expenses, and deferring the question of whether any of the investigator's fees should be paid by Kristeen.

The interim custody order awarded Kristeen primary custody and gave John visitation rights as follows: one out of every four weeks, Kristeen was to come to Kodiak and provide John with three hours of visitation each morning and three each afternoon; the remaining three weeks Kristeen had to offer John the same visitation schedule if he was in Karluk. John, who emphasizes repeatedly throughout his briefing that he wanted to spend time with his child during Noah's critical bonding stage, "chose his son over his career," living in Karluk three weeks out of four and focusing on Noah during the one Kodiak week, even though there were no employment opportunities in Karluk and few in Kodiak. John found no work in Kodiak, despite his employment opportunities there prior to moving to New Mexico. He spent most of the end of 1999 and 2000 unemployed and living off his savings, but spending time and bonding with Noah. For a few months in 2000, John worked in Craig, where his employer let him work for one or two weeks and then take one or two weeks off to return to Kodiak, but John terminated that employment because it kept him away from Noah for too long.

In late 1999 the case was assigned to Superior Court Judge Eric T. Sanders. In December 1999 Judge Sanders ordered John to pay Kristeen $750 a month in interim child support, to pay $5,000 towards her attorney's fees, and to pay $5,000 towards the custody investigator's costs. In May 2000 Judge Sanders ordered John to pay $3,900, the cost for Kristeen's psychological evaluation. At a settlement conference in July 2000, John and Kristeen reached agreement on the issues concerning custody of Noah. On October 3, 2000, Judge Sanders issued findings of fact and conclusions of law granting John and Kristeen joint legal and physical custody of Noah and setting out a year-round custodial schedule. On October 4 Judge Sanders ordered John to pay another $10,000 towards Kristeen's attorney's fees, $3,000 in back child support, and $1,000 a month for future child support. In February 2001 Judge Sanders ordered John to be solely responsible for the remaining $5,611.58 owed to the custody investigator.

John filed three motions for reconsideration. The first, filed October 16, sought to modify the October 3 custody order. The second, filed October 17, sought to modify the October 4 fee and support order. The third, filed December 19, again sought to modify the October 4 fee and support order. Judge Sanders ruled that the first two motions were not well taken because John had not complied with Civil Rule 77(k). Judge Sanders nevertheless modified his financial order to clarify his reasoning for setting John's child support obligation at $1,000 a month. Judge Sanders struck the third motion, refusing to consider the motion or its accompanying documents, because the motion was untimely.

John appeals, arguing that the superior court erred in issuing interim and prospective child support orders without any evidence to support its estimates and based on his potential income in violation of Civil Rule

90.3(a)(4), and that it exacerbated the error by increasing the child support amount under Rule 90.3(c).[1] John also argues that the superior court erred in ordering him to pay Kristeen's attorney's fees, the custody investigator's costs, and the fees for Kristeen's psychological evaluation.

## III. DISCUSSION

### A. Issues Concerning Child Support

We reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard.[2] We will find an abuse of discretion when our review of the record leaves us with "a definite and firm conviction based on the record as a whole that a mistake has been made."[3] Whether the superior court applied the right legal standard in making its child support determination is a question of law that we review de novo.[4] The superior court's factual findings regarding a party's income for calculating child support are subject to the clearly erroneous standard of review.[5]

#### 1. John failed to preserve for appeal his challenge to the interim child support award.

John argues that the superior court erred by failing to use the prescribed guidelines under Civil Rule 90.3(a) to determine John's interim child support obligation, instead pulling a figure out of "thin air." John never challenged the correctness of the interim child support award before the superior court. As such, he failed to preserve this claim for appeal.[6]

Even if John had preserved this claim, the interim award was well within the court's discretion. The only evidence of John's income before the court when it issued the interim child support order in December 1999 was his child support guidelines affidavit, which indicated that his monthly net income was $4,938.75 and that his corresponding child support obligation would be $987.75. Kristeen is thus correct in asserting that the information before the court could have justified an award of $987.75, let alone an award of $750. Granted, John's income figures were based on the assumption that John would be returning to his position in New Mexico, which never occurred. John provided no new income figures for the court, however, and did not submit a new child support guidelines affidavit.[7] Accordingly, even if John had preserved this argument for appeal, setting the interim award at $750 was well within the court's "broad equitable powers to fashion a child support award."[8]

#### 2. The prospective child support award must be remanded for additional findings.

The day after granting John and Kristeen shared physical custody of Noah, the superior court issued its October 4, 2000 order setting prospective child support. Since John and Kristeen had joint physical custody, the court traditionally would have applied the Rule 90.3(b) formula. Instead, the court based its award on Rule 90.3(c)(1)(A), finding that "manifest injustice

1. In pre-briefing orders, we ruled that John could not appeal the custody decision itself.

2. *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001).

3. *Id.* (citations and internal quotations omitted).

4. *Id.*

5. *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001).

6. *See Mapco Express, Inc. v. Faulk*, 24 P.3d 531, 540 n. 29 (Alaska 2001) ("As a general rule, this court will not consider arguments attacking a judgment for the first time on appeal.").

7. John implies that the superior court should have based the interim support order on his "current and actual income" (presumably, zero) or held a hearing to "flush out or develop the facts" about his actual income at the time. He never requested such a hearing, however, and the court had the discretion to use the evidence that John submitted to it. Furthermore, John later acknowledged that based on the pleadings, the court determined that $750 was the appropriate figure, and he argued that this decision should be followed.

8. *Coghill v. Coghill*, 836 P.2d 921, 924 (Alaska 1992) (internal quotations omitted); *see also Zimin v. Zimin*, 837 P.2d 118, 123 n. 8 (Alaska 1992) ("Child support determinations are within the broad discretion of the trial court....").

would result if the standard calculation was utilized in this instance." The court found that the increased award was justified by Kristeen's move from Karluk to Kodiak so that Noah could spend time with John and by the concomitant sacrifices in her lifestyle and increases in her expenses. The court fulfilled its Rule 90.3(c)(1)(A) obligation to "specify ... the amount of support which would have been required but for the variation" four months later in its order on motions for reconsideration, when it modified its October 4 order to include the following:

> Based on the parties' prior income earning capacity, I find that Dr. Koller should make net income in excess of $84,000 per year, and Kristeen's is about $12,000 per year. Assuming they split custody, which they will soon, Rule 90.3(b) would normally require John to pay Kristeen $10,800 per year, or $900 per month.

John challenges the court's estimation of his child support obligation.

### a. The court's estimation of John's income at more than $84,000 did not have adequate evidentiary support.

John first argues that the court had no basis for finding his net income to be in excess of $84,000. It was certainly understandable that the court intuited that John could make more than $84,000 as a physician in a town the size of Kodiak. Some circumstantial evidence supported this intuition, such as the fact that John had previously received the employee of the year award and was made chief of staff at the hospital. How-

ever, given that John notified the court of his difficulties finding work, the court needed to base John's income figure on stronger evidence.

■■■■■ "In determining earning capacity under Alaska Civil Rule 90.3, a trial court has the discretion to choose 'the best indicator of ... future earning capacity' based on the evidence before it." [9] The only income documents of John's that the court had before it on October 4, 2000 were his child support guidelines affidavit and the attached wage statement from New Mexico, which showed his net income to be $59,265.48.[10] His gross income, derived from those forms, was $78,396. "A trial court is required to make specific findings to support a determination of adjusted income under Civil Rule 90.3," [11] but the court issued no findings explaining how it arrived at the $84,000 figure. Because there was no evidentiary support for the court's finding that John's income was in excess of $84,000, we vacate the prospective child support award and remand for additional findings. On remand, the court can take additional evidence and testimony at its discretion concerning the availability of jobs in the area, how much other similarly situated doctors earn, John's historical earnings, and what John actually earned.[12]

### b. The exception for parents caring for a child under the age of two would be inapplicable in this context.

John next contends that the court erred by imputing his income under Rule 90.3(a)(4).

---

9. *Virgin v. Virgin*, 990 P.2d 1040, 1049 (Alaska 1999) (quoting *Coghill*, 836 P.2d at 926).

10. John admits that the court did not have before it on October 4 his 1999 tax return and modified (unsworn) child support guidelines affidavit, showing his income to be between $44,000 and $46,000, since he first submitted them on October 17 attached to one of his motions for reconsideration. He argues, however, that the court had the opportunity on reconsideration to issue a revised child support order. Even if the court's rejection of John's reconsideration motions for not being in compliance with Rule 77(k) was improper, which John does not allege and which is not the case, the court was under no obligation to consider the documents attached to those motions. *See Dunn v. Dunn*, 952 P.2d 268, 271 n. 2

(Alaska 1998) ("Because it is not appropriate to present new evidence on a motion for reconsideration, we will not consider the evidence ... submitted with [the] reconsideration motion."). Accordingly, we need not consider those income documents either.

11. *Gallant v. Gallant*, 882 P.2d 1252, 1255 (Alaska 1994).

12. *See Spott v. Spott*, 17 P.3d 52, 56 (Alaska 2001) ("In making retrospective rather than prospective child support awards actual income rather than earlier predictions as to income should be used."); *Murray v. Murray*, 856 P.2d 463, 466 (Alaska 1993) (noting that decision to receive new evidence on remand lies within trial court's discretion).

Because we are vacating the prospective child support award, we need not determine whether the court in fact imputed John's income or merely determined John's future earning capacity.[13] However, to provide guidance to the court should it decide on remand that John was unreasonably under-employed, we now address John's principal argument, namely that the court was prohibited from imputing his income because he was caring for a child under the age of two.

 Rule 90.3(a)(4) states: "A determination of potential income may not be made for a parent ... who is caring for a child under two years of age to whom the parents owe a joint legal responsibility." John's argument is relevant only for the period from October 2000, when the court ordered prospective child support, to July 2001, when Noah turned two. John owed a legal responsibility to Noah, since "a parent's duty of support 'commences at the date of the birth of the child.' "[14] Because there was shared physical custody, both Kristeen and John could also be said to be "caring" for Noah. However, although Rule 90.3(a)(4) applies to cases of shared custody,[15] the "caring for a child" exception is not meant to apply to situations like the present one.

 If each of the parents sharing physical custody of a child under the age of two could stop working and claim that his or her income could not be imputed under Rule 90.3(a)(4), then no support would be provided for that child. This result would be contrary to the very purpose of the Rule 90.3 guidelines, namely "to ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay."[16] Cases and guidelines from other states support the view that "caring for a child" exceptions are only intended to prevent the penalization of one parent who stays home virtually full-time to act as the primary caregiver.[17] The court below may thus impute John's potential income should it deem such action necessary on remand, although it can of course consider John's care of Noah and his difficulty in finding employment when determining whether John was "voluntarily and unreasonably ... unemployed or underemployed."[18]

### c. The court's use of the "manifest injustice" exception was not an abuse of discretion.

 John contends that the court "exacerbated its error" by increasing to $1,000

---

**13.** John maintains that determining future earning capacity and imputing potential income are the same thing. The difference is that the former determination is merely based on the obligor's adjusted annual income, or at least the most recent reliable information regarding that income, *Coghill*, 836 P.2d at 925–26, while the latter is based on "work history, qualifications, and job opportunities." Alaska R. Civ. P. 90.3(a)(4).

**14.** *Rubright v. Arnold*, 973 P.2d 580, 586 (Alaska 1999) (quoting *State, Dep't of Revenue, Child Support Enforcement Div. v. Rios*, 938 P.2d 1013, 1015 (Alaska 1997)).

**15.** *See Olmstead v. Ziegler*, 42 P.3d 1102, 1103–06 (Alaska 2002) (holding that trial court did not err in finding father with shared custody to be voluntarily and unreasonably underemployed); *Lacher v. Lacher*, 993 P.2d 413, 417 & 423–24 (Alaska 1999) (holding that trial court's imputation of income for voluntarily underemployed mother with shared custody was not clearly erroneous).

**16.** Alaska R. Civ. P. 90.3, cmt. I.B.

**17.** *See, e. g.*, Me.Rev.Stat. Ann tit. 19–A, § 2001(5)(D) (2002) (stating that "a party that is personally providing primary care for a child

under the age of 3 years is deemed not available for employment"); *Canning v. Juskalian*, 33 Mass.App.Ct. 202, 597 N.E.2d 1074, 1077 (1992) (describing Massachusetts Guideline II–H which prohibits imputation of potential income for "a custodial parent with children who are under the age of six living in the home"); N.M. Stat. Ann. § 40–4–11.1(C)(1) (1978) (noting that potential income "need not be imputed to the primary custodial parent actively caring for a child of the parties who is under the age of six or disabled"). Pennsylvania employs the "nurturing parent doctrine," which holds that, in appropriate cases, "earning capacity cannot always be imputed to a parent who chooses to stay home with a minor child." *Frankenfield v. Feeser*, 449 Pa.Super. 47, 672 A.2d 1347, 1349 (1996) (quoting *Hesidenz v. Carbin*, 354 Pa.Super. 610, 512 A.2d 707, 710 (1986)). Other states that have the same type of guideline language as Alaska do not appear to have explicitly addressed this question either. *See, e.g.*, Colo.Rev.Stat. Ann. § 14–10–115(7)(b)(1); Ky.Rev.Stat. Ann. § 403.212(2)(d); La.Rev.Stat. Ann. § 315.11 (formerly § 315.9); Md.Code Ann., Fam. Law § 12–204(b)(2)(ii).

**18.** Alaska R. Civ. P. 90.3(a)(4).

under Rule 90.3(c) the $900 award it had estimated under Rule 90.3(b).[19] Rule 90.3(c)(1) permits variance from the usual Rule 90.3 calculations "for good cause upon proof by clear and convincing evidence that manifest injustice would result" without the variance. The "good cause" inquiry *"must focus first and foremost on the needs of the children."* [20] John maintains that the court's findings of "manifest injustice" and "good cause" were insufficient and that the court's focus on Kristeen's move from Karluk to Kodiak resembled alimony more than child support because it focused on Kristeen's needs instead of Noah's. John alleges that Kristeen had to move to Kodiak anyway for her older son's schooling and that the court's findings fail to consider the sacrifices that John made to spend time with Noah. The court's findings, however, are not clearly erroneous.

■ Rule 90.3(c)(1)(A) states that "good cause" could include a finding of "unusual circumstances"; the Rule's commentary notes that examples of unusual circumstances could include "extraordinary expenses." [21]

In an affidavit, Kristeen estimated her expenses for moving to and living in Kodiak. John countered the assertions in Kristeen's affidavit in an e-mail to his lawyer, but although the subject line of this e-mail was "affidavit," it cannot be considered one.[22] Regardless, it was within the court's discretion to find Kristeen's affidavit to constitute "clear and convincing evidence" that her expenses for moving to Kodiak would be "extraordinary," particularly factoring in Kristeen's income as required by Rule 90.3(c)(1)(A).[23] Furthermore, the court acknowledged the distinction between child support and alimony, noting that "Dr. Koller has a duty to financially support Noah, not Ms. Reft." The court's recognition that Kristeen's move was "so that Noah can be with his father about half the time" further manifests the court's awareness of the child's needs.[24]

Accordingly, because the court recognized the distinction between child support and alimony and acted within its discretion in finding Kristeen's moving expenses to consti-

19. If the court had calculated John's child support obligation under Rule 90.3(b) using his original Rule 90.3 affidavit figure of $4,938.79 a month and Kristeen's figure of $826.19 a month, it would have yielded an obligation of $910.89 a month for the period from October 1, 2000 to February 1, 2001, when Kristeen had Noah sixty-seven percent of the time and John had him thirty-three percent of the time, and an obligation of $686.07 per month after February 1, 2001, when the split was 54%–46% ($616.89 if one assumes a 50–50 split).

20. *Doyle v. Doyle,* 815 P.2d 366, 373 (Alaska 1991).

21. Alaska R. Civ. P. 90.3, cmt. VI.B.

22. The e-mail is unsworn and uncertified. In the accompanying motion, John's attorney at the time noted that when John returned to Kodiak from Craig and the attorney returned to Alaska, they would provide a signed version of the affidavit. This signed version is nowhere in the record. Kristeen urged the court to ignore the e-mail, and it was within the court's discretion to do so, since the e-mail fails to meet the requirements of AS 09.63.020.

23. Rule 90.3(c)(1)(A) states that when determining whether unusual circumstances create good cause for variance, "[t]he court shall consider the custodial parent's income in this determina-

tion...." *See also Robinson v. Robinson,* 961 P.2d 1000, 1004 (Alaska 1998) (finding meritorious the argument that it "would have been within the superior court's discretion to increase Robinson's child support obligations" because "the high cost of living in Unalaska" could constitute "extraordinary expenses").

24. John argues that using the Rule 90.3(c)(1)(A) variance here is contrary to sound public policy, since "society ought to encourage parents to spend as much time with their newborn as possible, and to do so without the fear of the court either branding them as 'underemployed' or ruling that it would be 'manifestly unjust' not to greatly increase their monthly support obligation." He also distinguishes himself from other "voluntarily underemployed" cases by noting that he is neither lazy nor stingy nor in need of being goaded into work; rather, his "true incentive is to spend time with a newborn child." The public policy John advocates is laudable, but the "manifest injustice" exception exists to allow for variance when unusual circumstances require a different award that is "just and proper for the parties to contribute toward the nurture and education of their children." Alaska R. Civ. P. 90.3(c)(1)(A). *See also Coats v. Finn,* 779 P.2d 775, 777 (Alaska 1989) ("[A]n unfair result is an award which substantially exceeds or falls short of the amount needed to provide for the child's reasonable needs."). Meeting the needs of children is at least an equally laudable public policy.

tute "unusual circumstances," we conclude that the court did not err in varying the award under Rule 90.3(c)(1)(A).[25] If the court determines on remand that such a variation is still required to avoid manifest injustice, it may again use Rule 90.3(c)(1)(A) to vary the award to an amount it believes is "just and proper for [John] to contribute toward the nurture and education of [his] child[ ]."[26]

## B. Issues Concerning Fees and Costs

John challenges several of the superior court's orders concerning fees and costs. We review for abuse of discretion a superior court's order to pay another party's attorney's fees, expert fees, and other costs.[27] "The trial court's discretion in awarding attorney's fees is broad and its decision will not be disturbed on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.' "[28] The determination of which statute or rule applies to an award of attorney's fees is a question of law that we review de novo, "adopting the rule of law that is most persuasive in light of policy, reason, and precedent."[29]

### 1. The court did not err in applying AS 25.24.140(a)(1).

Attorney's fees are usually awarded under Civil Rule 82, which grants attorney's fees to the prevailing party in an action. "However, divorce cases represent a well-established exception to this general rule. Attorney's fees in divorce cases are based on the relative economic situations and earning powers of the parties, rather than prevailing party status."[30] "[T]he divorce exception to Civil Rule 82 'is based on a broad reading of AS 25.24.140(a)(1) [pertaining to an interim award of attorney's fees in divorce cases] ..., and on the reality that there is usually no prevailing party in a divorce case.' "[31] Costs in divorce cases are treated like attorney's fees in that they too are "exempt from the requirement that they be awarded in favor of the prevailing party...."[32] Although the superior court never explicitly referred to AS 25.24.140(a)(1) in awarding costs and fees, the parties agree that the court clearly utilized the divorce exception.

John contends that the applicability of the divorce exception in non-divorce cases turns on how close the couple was to a marital unit. Because he and Kristeen had a one-month relationship, never lived together, and never jointly owned property, John argues that the court erroneously applied the divorce exception to this case. Kristeen counters that since she and John are litigating custody in the first instance, the divorce exception should apply regardless of whether or not the parties resembled a marital unit. We agree with Kristeen.

We have held that the divorce exception should only be used in cases that "closely resemble a divorce action or ... involve the kinds of issues—such as the initial determination of custody and child support—that generally arise in the immediate aftermath of a long-term relationship break-up...."[33]

---

**25.** John claims the court used both Rule 90.3(c)(1) and (c)(2). There is no indication, however, that the court used (c)(2), other than its finding that John earned over $84,000. The court explicitly based its support award on (c)(1)(A)'s "manifest injustice" exception.

**26.** Alaska R. Civ. P. 90.3(c)(1)(A).

**27.** *Nicholson v. Wolfe*, 974 P.2d 417, 427 (Alaska 1999); *Virgin v. Virgin*, 990 P.2d 1040, 1043 (Alaska 1999).

**28.** *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992) (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

**29.** *Sanders v. Barth*, 12 P.3d 766, 767–68 (Alaska 2000) (internal quotations omitted).

**30.** *Id.* at 768 (internal citations and quotations omitted).

**31.** *B.J. v. J.D.*, 950 P.2d 113, 118 (Alaska 1997) (quoting *L.L.M. v. P.M.*, 754 P.2d 262, 264 (Alaska 1988)). AS 25.24.140(a)(1) states: "During the pendency of [a divorce] action, a spouse may ... be awarded expenses, including ... attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action...."

**32.** *Hilliker v. Hilliker*, 828 P.2d 1205, 1206 (Alaska 1992).

**33.** *Sanders*, 12 P.3d at 768; *see also Bergstrom v. Lindback*, 779 P.2d 1235, 1238 (Alaska 1989).

This is because "it is of paramount importance that the parties be able to litigate on a fairly equal plane" in disputes on these issues.[34] We have also determined that the divorce exception seems applicable when there is a "short period of time between the breakup of the parties' relationship and the filing of the action [on] ... property division, child custody, and child support issues...."[35] Although John and Kristeen in no way resembled a marital unit (apart from having a child together), the issues involved in this case and the promptness with which it was filed look just like a divorce case. John filed a custody complaint only a few months after Noah was born, and the initial custody and support issues in dispute are the types of issues "that generally arise in the immediate aftermath of a long-term relationship breakup," even though John and Kristeen did not in fact have a long-term relationship. Accordingly, the court did not err in applying the divorce exception to Civil Rule 82.[36]

## 2. The court did not err in allocating to John the attorney's fees, the cost of Kristeen's psychological evaluation, and the custody investigator's fees.

■ Under the divorce exception, fees and costs are allocated "based on the relative economic situations and earning powers of the parties...."[37] John maintains that the superior court's fee and cost allocations were error because the court used John's imputed income instead of his actual income when assessing the parties' relative economic situations. Again, we need not decide whether the superior court imputed John's income. The court had John's child support guidelines affidavit showing his gross annual income to be $78,396 and his net income to be $59,265.48. It also had Kristeen's income statements showing an annual gross income below $12,000, a net income below $10,000, and another son to care for. Regardless of whether the court used the $84,000 figure or the numbers from John's affidavit, the evidence clearly established that John's income was several times greater than Kristeen's. There was also evidence that John had a sizable bank account and the skills to earn a significantly higher income than Kristeen. The disparate economic situations and earning capacities of the parties justified the court's allocations of attorney's fees and the cost of Kristeen's psychological evaluation.[38]

■ John contends that the superior court erred by allocating the custody investigator's costs to him in violation of Rule 90.6(i), which states that "[f]ees and costs for

**34.** *Sanders*, 12 P.3d at 769 (internal quotations omitted).

**35.** *Bishop v. Clark*, 54 P.3d 804, 813–14 (Alaska 2002). *Cf. Sanders*, 12 P.3d at 769 (declining to apply exception because parties were litigating child support more than ten years after end of relationship and because suit was strictly about money, in contrast to usual quasi-divorce cases between unmarried couples which "occur almost immediately after the break-up of the long-term relationship" and "traditionally involve issues that inevitably arise immediately after such a break-up—such as custody, visitation, child support, and property division"); *Rubright v. Arnold*, 973 P.2d 580, 582 & 586 (Alaska 1999) (declining to apply exception to paternity action brought five years after child was born from extramarital relationship because did not resemble divorce case); *B.J. v. J.D.*, 950 P.2d 113, 119 (Alaska 1997) (declining to apply exception in custody dispute between biological and non-biological parent filed more than three years after voluntary end of relationship).

**36.** John argues that establishing a rule that he has to bear the total cost of litigation himself (here, more than $40,000) would give Kristeen no incentive to act reasonably and every reason to overlitigate and wear him down financially until he agreed to whatever she wanted, contrary to AS 25.24.140(a)(1)'s caveat that courts should ensure that awarding attorney's fees "does not contribute to an unnecessary escalation in the litigation[.]" This argument has little merit. First, it appears that John paid only sixty percent of Kristeen's attorney's fees. Second, establishing the contrary rule would allow John to overlitigate and wear down Kristeen. It is the court's duty to try to strike a balance. AS 25.24.140(a)(1).

**37.** *Sanders v. Barth*, 12 P.3d 766, 768 (Alaska 2000) (internal citations and quotations omitted); *Hilliker v. Hilliker*, 828 P.2d 1205, 1206 (Alaska 1992).

**38.** *See Kelly v. Kelly*, 926 P.2d 1168, 1170 (Alaska 1996) ("The trial court's award of attorney's fees to Lisa accurately recognizes the substantial disparity between the earning capacity and economic situations of the parties.").

a private custody investigator will be divided equally between the parties unless the court finds good cause to change this allocation." Custody investigators can be considered expert witnesses,[39] and we have concluded that "costs for reimbursement of expert witnesses in divorce cases" are to be treated the same as attorney's fees in being exempt from the prevailing party requirement of Rule 82.[40] Allocation of such costs can thus also be "based on the relative economic situations and earning powers of the parties...."[41] The disparate economic situations and earning capacities of John and Kristeen therefore constitute sufficient "good cause" to justify the court's allocation of the custody investigator's fees to John.

### 3. No itemization of Kristeen's legal fees was required.

■ John argues that the superior court had an obligation to require Kristeen to itemize her legal fees because there was no evidence of her actual fees and because John objected repeatedly to paying them. Kristeen is correct that John did not adequately raise this point below. John complained frequently about having to pay Kristeen's attorney's fees and about how high they were. He requested an itemization in an e-mail to his attorney,[42] and later stated (in his reply to Kristeen's opposition to his motions for reconsideration) that many of her counsel's fees were unreasonable and that "I requested an itemization of his billings which I have not yet received."[43] However, John never made a motion in court seeking itemization. The absence of a specific cognizable request for itemization,[44] the superior court's broad

discretion in awarding attorney's fees,[45] and the fact that it only awarded Kristeen sixty percent of her fees, combine to defeat John's argument. No itemization was required.

### 4. The superior court did not err in failing to make findings about whether the parties exhibited "bad faith."

■ John asserts that the superior court's findings were insufficient because the court did not broach the subject of whether either party acted in "bad faith" before assessing litigation costs. A showing of bad faith, however, is only necessary in two circumstances. The first is in cases arising under AS 25.20.115,[46] which states that in "an action to modify, vacate, or enforce ... an order providing for custody of a child or visitation with a child," the superior court can award fees and costs, though it must consider "the relative financial resources of the parties and whether the parties have acted in good faith." This case is not one to modify, vacate, or enforce a custody order, however, and the applicable fees statute is not AS 25.20.115, but rather AS 25.24.140, which contains no similar "faith" requirement. In the principal case upon which John relies, in fact, we distinguished the requirements of the two statutes, stating that "under AS 25.20.115 the parties' relative financial resources do not necessarily take primacy over the presence or absence of good faith," unlike under AS 25.24.140(a)(1).[47] The second circumstance can occur under AS 25.24.140(a)(1) when a court increases a party's attorney's fee obligation as punishment

39. *See R.M. v. S.G.*, 13 P.3d 747, 752 n. 15 (Alaska 2000).

40. *Hilliker*, 828 P.2d at 1206.

41. *Sanders*, 12 P.3d at 768 (internal citations and quotations omitted).

42. We have already determined it to be within the superior court's discretion to ignore this e-mail, as it was not an affidavit despite its subject line.

43. We have also already determined that it was within the superior court's discretion to disregard these late-filed reconsideration motions.

44. *See, e. g., Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1138 (Alaska 1989) ("[W]e will not overturn a fee award for [lack of itemization] when ... no itemized statement was requested by the complaining party in its motion for reconsideration of the fee award."); *cf. Hatten v. Hatten*, 917 P.2d 667, 674 (Alaska 1996) (describing counsel's itemization request).

45. *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992).

46. *See, e. g., S.L. v. J.H.*, 883 P.2d 984 (Alaska 1994).

47. *Id.* at 985–86.

for "act[ing] in bad faith or engag[ing] in vexatious conduct." [48] This case, however, does not involve an increased fee award. Because neither of these circumstances applies in this case, the superior court did not err in failing to make any findings concerning John's "bad faith."

## IV. CONCLUSION

Because John never challenged before the superior court the correctness of the interim child support award, we hold that he failed to preserve this claim for appeal.

Because there was inadequate evidentiary support for the superior court's finding that John's adjusted annual income was in excess of $84,000, we VACATE the prospective child support order and REMAND for additional findings. The court has the discretion to take additional evidence or testimony concerning the availability of jobs in the area, how much other similarly situated doctors earn, John's historical earnings, and what John actually earned. The court may impute John's income for the period from October 2000 to July 2001 if it determines that John was unreasonably underemployed. The court may also utilize the "manifest injustice" variance of 90.3(c)(1) as it thinks just and proper.

Because John and Kristeen were litigating an initial custody and support dispute initiated only months after Noah's birth, because the income figures before the court justified the fee and cost awards, because there was no cognizable request for itemization, and because this case did not involve AS 25.20.115 or an increased fee award, we AFFIRM all the challenged fee and cost orders.

---

**48.** *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991).