NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NIMER AZZAM, | ) | |
| | ) | Supreme Court Nos. S-15441/15451 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-09-07151 CI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| CARLEY R. MORTENSON, | ) | |
| | ) | No. 1532 - February 25, 2015 |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Ted Stepovich, Law Office of Ted Stepovich, Anchorage, for Appellant. Douglas C. Perkins, Hartig Rhodes LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I.    INTRODUCTION

Both parents moved to modify the existing arrangement for joint custody of their daughter. The superior court decided that the parents' inability to communicate justified modification and that their child's best interests favored an award of sole legal and primary physical custody to the mother. The father appeals. We conclude that the

---

\*    Entered under Alaska Appellate Rule 214.

superior court did not abuse its discretion in deciding custody and therefore affirm its decision. We also affirm, as not clearly erroneous, the superior court's finding that the father had a gross annual income of $50,000 for purposes of calculating child support.

## II. FACTS AND PROCEEDINGS

Nimer Azzam and Carley Mortenson never married but lived together for a few extended periods over several years. They have one child, a daughter born in 2008. In 2009 they each petitioned for sole legal and primary physical custody, eventually negotiating successive agreements to share custody on a split-week schedule and then an alternating two-week schedule.

In late 2012 Carley moved to Texas in hopes of joining the Texas Air National Guard and thus paying for her education. By agreement she left their daughter in Alaska, and physical custody was shared between Nimer and Carley's mother. Carley returned permanently to Alaska eight months later. In the meantime, Nimer petitioned for primary physical and sole legal custody based on Carley's absence. Carley also moved for primary physical and sole legal custody upon her return, alleging that Nimer had been violent toward her and had interfered with her visits with her daughter while she was in Texas.

The superior court held an evidentiary hearing and issued a written order. Finding that the parties' inability to communicate required a modification of the shared custody arrangement, and weighing the best interests factors set out in AS 25.24.150(c), the court determined that sole legal and primary physical custody should be awarded to Carley. The court also found that the parent-child relationships involved no risk of physical harm despite allegations of domestic violence, and that unsupervised visitation with Nimer was consistent with the child's best interests.

Carley filed a proposed child support order in which she asserted that Nimer had under-reported his income; she asked the court to impute to him a gross

annual income of $50,000. She cited Nimer's testimony at the hearing and his checking account deposits over the previous seven months as evidence that he had multiple sources of income which his own proposed order failed to show. The court scheduled an evidentiary hearing; when Nimer did not appear, the superior court signed Carley's proposed order, adopting her proposed figure of $50,000 for Nimer's gross annual income.

Nimer appeals, arguing that the superior court abused its discretion in two ways: (1) by finding that the best interests of the child favored an award of sole legal and primary physical custody to Carley; and (2) by adopting Carley's estimate of his income for purposes of child support.

## III.    STANDARDS OF REVIEW

The superior court has broad discretion in its child custody decisions, and we will reverse only if the court's findings of fact are clearly erroneous or if the court abused its discretion.[1] "A factual finding is clearly erroneous when a review of the record leaves [this] court with a definite and firm conviction that the superior court has made a mistake."[2] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[3]

---

[1]    *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013) (citing *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[2]    *Id*. (quoting *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)) (internal quotation marks omitted).

[3]    *Id*. (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

We will reverse a child support award only if the superior court abused its discretion or applied an incorrect legal standard.[4] "We review the superior court's factual findings regarding a party's income for purposes of calculating child support for clear error."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Awarded Sole Legal And Primary Physical Custody To Carley.

Nimer contends that the superior court abused its discretion when, in granting sole legal and primary physical custody to Carley, it placed too much weight on the parents' inability to effectively communicate. We have repeatedly observed that "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interests."[6] But Nimer contends that most of the parents' communication difficulties arose after Carley moved to Texas, and that the parents would likely communicate better now that they both live in Alaska, "just miles apart," especially if their cooperation were encouraged by a neutral judge. Nimer does not convince us, however, that the superior court clearly erred in its finding that "the parties [do not] communicate well enough to share legal custody." Although Carley testified that her communications with Nimer deteriorated when she moved to Texas, she also testified that they remained difficult upon her return to Alaska, particularly with regard to selecting an appropriate school for their daughter. The superior court apparently

---

[4] *Mallory D. v. Malcolm D.*, 309 P.3d 845, 846 (Alaska 2013).

[5] *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[6] *Id*. at 298 n.31 (alteration removed) (quoting *Ronny M.*, 303 P.3d at 405) (internal quotation marks omitted); *see also Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991).

found this testimony credible and persuasive, and we defer to the superior court's assessment of the factual issue.[7]

Furthermore, the superior court cited the parents' communication problems only to support its determination that a modification of custody was warranted, not to support its subsequent determination that sole legal custody should be awarded to Carley.[8] The communication problems constituted the changed circumstances that justified a modification of the existing custody arrangement; having found that a modification was necessary, the superior court properly went on to decide which parent was the better choice for sole legal custody by considering all of the best interests factors under AS 25.24.150(c).[9]

Nimer contends that the superior court erred in this balancing process when it "considered facts that were considered when the original custody decree was entered," that is, allegations of domestic violence that preceded the 2009 decree. But as in *McAlpine v. Pacarro*,[10] the parties' earlier custody order was the product of a stipulated

---

[7]    *See Green v. Parks*, 338 P.3d 312, 314 (Alaska 2014) ("We grant particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.") (citations and internal quotation marks omitted).

[8]    *See T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993) (noting that a "continued lack of cooperation" between parents may be a change in circumstances sufficient to justify a modification of custody under AS 25.20.110).

[9]    *See Rego v. Rego*, 259 P.3d 447, 451 (Alaska 2011) ("The moving party is required to show a substantial change in circumstances, as a threshold matter, before the court moves on to consider the best interests analysis.").

[10]    262 P.3d 622, 626 (Alaska 2011); *see also Heather W. v. Rudy R.*, 274 P.3d 478, 486 (Alaska 2012) ("[I]t does not appear that evidence of Rudy's domestic violence has ever been heard in a custody proceeding, and thus the superior court erred in refusing
(continued...)

agreement, and the superior court was not called upon at that time to make any findings about domestic violence.[11] It was therefore appropriate for the superior court to consider evidence of domestic violence, regardless of when it was committed, when deciding the parties' motions to modify custody.[12]

The superior court conducted a complete analysis of the best interests factors under AS 25.24.150(c), weighing allegations of domestic violence in the balance along with the other factors. Finding that most factors were either marginally relevant or clearly favored neither parent, the court emphasized Carley's greater ability to facilitate a close and continuing relationship between father and daughter.[13] As for domestic violence, the superior court specifically found that the parties had, "for the most part," successfully shared custody since any domestic violence occurred, that a continuing relationship between the parents would not pose any risk of harm, and that there was no reason why visitation between Nimer and his daughter should be supervised. In short, the superior court's physical and legal custody decision was based

---

[10](...continued)
to consider evidence of domestic violence.").

[11] On this subject the superior court's 2009 findings of fact noted only that "the parties agree to dismiss all domestic violence restraining orders . . . and/or no contact orders between themselves."

[12] *See McAlpine*, 262 P.3d at 626 (noting that in modification proceedings, we have "direct[ed] the superior court to look back to events that occurred before the initial custody order if not adequately addressed at the initial custody determination or subsequent proceedings").

[13] *See* AS 25.24.150(c)(6) (listing "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child" as a best interests factor).

not on an adverse domestic violence finding, but on a complete analysis of the best interests factors, and its determination was within its discretion.

## B. The Superior Court's Finding Regarding Nimer's Income Is Not Clearly Erroneous.

Nimer challenges the superior court's child support order, which estimated that his gross annual income was $50,000. Alaska Rule of Civil Procedure 90.3 governs the calculation of child support awards.[14] It provides that "[a] child support award in a case in which one parent is awarded primary physical custody . . . will be calculated as [a percentage of] the adjusted annual income of the non-custodial parent."[15] In this case, Carley objected to Nimer's proposed child support order and alleged that there were discrepancies between his testimony at the custody hearing and the $16,000 in income he reported. The superior court scheduled a hearing to resolve any conflict in the evidence, but Nimer failed to appear, and the court adopted Carley's proposed order.

There was evidence to support the order. Nimer's brother Ali testified at the custody modification hearing that he employed Nimer full-time as a mechanic at his auto repair shop and that Nimer also helped him with repairs at various rental properties in exchange for a place to live. Nimer testified that he owned an ice-cream truck from which, time permitting, he earned $3,000 per month during the summer. Carley offered proof that Nimer was also working at his new wife's family-owned doughnut shop, and that he worked part-time at a religious community center as well. Bank statements showed deposits to Nimer's account of nearly $45,000 in just seven months of 2013.

In the absence of a certain dollar figure, the superior court's estimate of $50,000 appears reasonable in light of the evidence and the lack of support for Nimer's

---

[14]   *Kristina B. v. Edward B.*, 329 P.3d 202, 212 (Alaska 2014).

[15]   Alaska R. Civ. P. 90.3(a).

lower estimate.  We cannot conclude that the superior court clearly erred in determining the amount of Nimer's income for purposes of child support.

## V.	CONCLUSION

The superior court's orders are AFFIRMED.