13 P.3d 747 (2000)
R.M., Appellant,
v.
S.G., Appellee.
No. S-9163.
Supreme Court of Alaska.
December 8, 2000.
*748 Kenneth C. Kirk, Anchorage, for Appellant.
Phyllis A. Shepherd, Law Office of Phyllis A. Shepherd, Anchorage, for Appellee.
Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

OPINION
FABE, Chief Justice.

I. INTRODUCTION

During a visit with their father, Scott Grenville's[1] three daughters complained of abuse in the household of the custodial parent, *749 Rose Marlowe, and her new husband, Michael Marlowe. Scott sought and received a domestic violence restraining order and moved for custody of the girls. The superior court set a custody modification hearing and appointed a child custody investigator. The court held the hearing, admitted the custody investigator's report, and determined that the circumstances justified modification of custody, awarding custody to Scott, and requiring that Rose's visitation with her daughters be supervised. Rose appeals. Because we find that the trial court's factual findings were not clearly erroneous and its legal conclusions were correctly reached, we affirm the decision of the superior court.

II. FACTS AND PROCEEDINGS

Rose Marlowe and Scott Grenville ended their nine-year marriage in 1997. The terms of their dissolution reflected the parties' agreement that Rose have full physical and legal custody of their three daughters. During the marriage Rose and her mother provided primary care to the children, while Scott frequently worked nights as a manager at a fast food restaurant.
Shortly after the dissolution, Rose remarried. Rose did not tell Scott of her remarriage for several months.
The parties failed to agree on a specific visitation schedule in their dissolution, but resolved to work things out amicably. Accordingly, in the summer of 1998, Rose permitted Scott to take the children to Arizona for an extended visit with Scott's relatives. During the visit the children made allegations that physical abuse occurred in Michael and Rose's household.
Scott subsequently sought and received a domestic violence restraining order. The order granted him temporary custody, allowed Rose to have supervised visitation with the children, and barred Michael's presence during visitation. A hearing was scheduled to review the order, but was postponed when Rose consolidated the domestic violence and dissolution cases. She asked for the return of the children to her custody in Alaska. Scott then sought full custody of the children, claiming that Rose's remarriage and Michael's alleged abuse constituted a material change in circumstances.
Superior Court Judge Beverly W. Cutler ordered the children returned to Alaska and appointed a custody investigator, Dr. Melinda Glass. Dr. Glass conducted a thorough investigation and issued a sixty-two page report. She recommended awarding Scott full custody with Rose receiving short periods of supervised visitation.
In the custody hearing, the superior court considered extensive evidence, including Dr. Glass's testimony and report. The court found a substantial change in circumstances resulting from Michael's extreme physical discipline of the children. The court considered evidence that Michael had spanked the children with objects including a belt, a metal spoon, and a spatula, and that one child had been spanked hard enough to cause bleeding. The court concluded that Michael had engaged in unacceptable corporal punishment. The court found Rose to be a capable physical custodian. But it also found that Rose condoned her husband's behavior. As a result, the court found, the children validly feared that their mother would not protect them from Michael. In light of the children's preferences, the evidence of inappropriate physical punishment by Michael, and the finding of Rose's inability to foster a loving relationship between the children and Scott, the court concluded that Scott's custody would serve the children's best interests. The court also found that Rose's visitation should be supervised. Rose appeals.

III. STANDARD OF REVIEW

"Courts typically review discovery orders under the abuse of discretion standard."[2] And "[t]he standard of review of a trial court's decision to admit evidence is abuse of discretion."[3]
*750 We "will reverse a trial court's resolution of custody issues only if this court is convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[4]

IV. DISCUSSION

A. Procedural Issues

Rose raises three procedural challenges to the superior court's decision. First, she claims that by failing to order the custody investigator to release the raw data from Scott's psychological tests the court foreclosed Rose's opportunity to challenge the investigator's conclusions. Second, Rose argues that she was unable to adequately cross-examine the custody investigator because the court did not allow her to depose Dr. Glass without paying a substantial fee in advance. Finally, Rose argues that the court admitted hearsay statements through the custody investigator's report.

1. Release of custody investigator's psychological testing data

Both prior to and during the modification hearing, Rose sought access to raw data from the custody investigator's psychological tests of Scott Grenville. Dr. Glass, citing the ethical obligations of her profession, refused to release the data to anyone but a qualified mental health care professional. For the same reason, Dr. Glass required Scott Grenville's permission to release his test data. Although Rose sought to compel discovery and release of the data, the court did not rule on Rose's motion because Scott indicated that he would consent to release the data directly to Rose's expert, Dr. Bruce Smith. Scott soon changed his mind and informed Rose, by letter, that he would not consent to release the data after all. Rose never obtained a printed record of the information she sought, although Dr. Glass disclosed some of the data underlying Scott's test results in her hearing testimony.
Rose argues that her inadequate access to Scott's psychological test data unfairly deprived her of the opportunity to have her own expert analyze the data and offer an opinion. However, she did not take reasonable steps to remedy her situation once she learned of Scott's refusal to release the data. Upon learning that Scott would not authorize the data's release to her expert, Rose could have renewed her motion to compel its production. She also could have requested a continuance in order to have time to seek independent evaluation of the data. She did neither,[5] but instead moved to exclude from evidence Dr. Glass's entire testimony and report. The superior court correctly refused to grant this extreme and inappropriate remedy.
We have discussed appropriate sanctions for inadequate discovery responses in cases interpreting Alaska Civil Rule 37. Rule 37 limits a court's power to "make an order that has the effect of establishing or dismissing a claim or defense or determining a central issue in the litigation."[6] It also promotes narrowly tailored sanctions by requiring courts to consider "whether a lesser sanction would adequately protect the opposing party and deter other discovery violations."[7] Rule 37 is "the principal source of sanctions for inadequate discovery responses."[8] Its principles are appropriately applied where, as here, a party reneges on an oral commitment to provide evidence.
We have repeatedly interpreted Rule 37 to preclude extreme remedies for relatively minor discovery violations.[9] For example, in *751 Wasserman v. Bartholomew,[10] we reviewed a trial court's exclusion of the testimony of a non-party witness who had refused to disclose information sought by a party. We held that exclusion of testimony is not an appropriate or effective sanction for a recalcitrant non-party witness.[11] This conclusion is even more compelling where an expert witness appropriately refuses to release raw test data absent the test subject's consent or a court order. When Scott informed Rose that he would not release the test data, Rose could have requested that the superior court order its release to Rose's chosen expert. Depriving the court of the ability to consider the custody investigator's entire report and testimony as a sanction for Scott's misbehavior would frustrate the purpose of Rule 37, which is "to effectuate the discovery process" and "to ensure that an individual may have a just determination of his case upon the merits."[12] In Wasserman we held that, "[b]ecause [the witness] was not a party, and because the defendants did not seek an order to compel her deposition testimony," the trial court abused its discretion by excluding the witness's testimony.[13] Total exclusion of Dr. Glass as a witness similarly would not have been appropriate here. The superior court correctly refused to grant this extreme remedy, and cannot be held responsible for Rose's failure to seek more reasonable relief.
Rose has presented no basis for us to conclude that a less extreme sanction than the proposed exclusion of Dr. Glass's testimony and report would have been ineffective.[14] Once Rose learned that the court declined to exclude Dr. Glass's testimony, she should have sought a more narrowly tailored remedy by moving to compel production of the data and moving for a continuance to provide her own expert time to analyze the data.
Even if the trial court could have fashioned such a remedy of its own accord, compelling release of the test data would probably not have affected the modification hearing's outcome. As Judge Cutler pointed out, a "huge amount of information" concerning the welfare of the children was available to both the court and the parties. In Dr. Glass's sixty-two-page report, discussion of Scott's test results occupies only three paragraphsand the picture that these paragraphs paint of Scott is not a favorable one. The trial court recognized the relative insignificance of the disputed data by stating that it would not attribute much weight to the raw numbers. As the trial court's findings make clear, the behavior of the parties, not psychological profiling, persuaded the court to modify the custody award. The court found that Michael engaged in unacceptable corporal punishment, that the children felt unprotected by Rose, and that the children were suffering emotional damage as a result. These findings alone adequately support the superior court's conclusions; conflicting expert interpretations of the raw psychological test data would not have been likely to alter this outcome.

2. Payment for deposition of the custody investigator

Rose also alleges that the superior court abused its discretion by requiring that she pay Dr. Glass's $1,200 fee before deposing the custody investigator. Rose had agreed to pay the custody investigator up to $600 for deposition time, but objected to paying an additional $600 for time Dr. Glass spent reviewing her notes prior to deposition. The court ruled that if Rose wished to conduct a deposition of Dr. Glasswhich the court believed was unnecessary to fair resolution of the issues and which went beyond the parties' original division-of-payment agreement for the custody investigator *752 Rose would have to pay Dr. Glass in advance. The high cost, Rose contends, effectively deprived her of the opportunity to take Dr. Glass's deposition.
Alaska Rule of Civil Procedure 26(b)(4)(C) provides guidelines for payment of experts,[15] stating that "[u]nless manifest injustice would result ... the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." Rose has neither argued nor demonstrated that the $1,200 fee constituted a "manifest injustice." Thus, we conclude that the superior court did not abuse its discretion in requiring payment.

3. Admission of facts contained in the custody investigator's report

Rose contends that the superior court inappropriately admitted and considered hearsay in Dr. Glass's report. Specifically, she argues that while Dr. Glass legitimately relied upon the children's statements in forming her expert opinion, the court erred in considering these statements for the truth of the matters asserted. Yet Rose did not object to the admission of Dr. Glass's report or the hearsay statements it contained at the time it was proffered and admitted.[16] In fact, she raised this objection for the first time in her closing argument to the superior court. And although Rose argues that hearsay statements offered by her own witnesses were unfairly excluded, Judge Cutler repeatedly indicated that she excluded that testimony in part because "the court's just going to rely on Dr. Glass to have heard everybody's statements about what the girls said and so forth." Even upon these expressions of the court's intent to rely upon the children's statements in Dr. Glass's report for the truth of the matters asserted, Rose never objected.
Alaska Rule of Evidence 103 requires a "timely objection or motion to strike ... stating the specific ground of objection."[17] Because Rose did not properly raise her objection below, she has waived it on appeal.[18] "Ordinarily an issue which was not raised in the trial court will not be treated on appeal."[19]

B. Modification of Primary Custody

Rose challenges the superior court's decision to modify custody. She argues that the evidence does not support the conclusions required by AS 25.20.110(a) prior to modification: that circumstances have changed and that modification is in the best interests of the child.
Rose's brief raises five specific challenges to the superior court's interpretation of evidence. In two instances, she questions the trial court's determinations of witness credibility. First, she argues that because Dr. Glass had too little experience the court should not have relied on her conclusions. Second, she contends that the court should have given greater weight to the Marlowes' own testimony that they no longer used corporal punishment. But the superior court considered the credibility of all of the witnesses, and made explicit findings as to the credibility of Rose's and Michael's testimony. We defer to the trial court's determination of witness credibility; the trial court appropriately decides what weight to afford witness *753 testimony.[20]
Rose also challenges the trial court's factual findings. She argues that evidence does not support the court's conclusion that Rose acted to alienate Scott. She also argues that the record inadequately supported the court's conclusions that Michael inflicted corporal punishment. Both of these allegations implicate a core competence of the trial court as finder of fact. Absent a showing of clear error, we will not reverse the superior court on these grounds.[21] Here, the court cited ample evidence in support of its conclusions, including the testimony of the children's grandmother, Michael's own testimony, Dr. Glass's report, and previous investigations by the Division of Family & Youth Services. We find no error in the superior court's assessment of the evidence.
Finally, Rose claims that the court "simply ignored" evidence of Scott's poor parenting. In fact, the court referred twice in its findings to improvements in Scott's parenting skills, and cited this change as one reason for granting him custody. This suggests that the court did not ignore Scott's earlier problems, but rather weighed the evidence to conclude that the best interests of the children would be served if he had custody. This conclusion was well supported and not clearly erroneous.[22] We reject Rose's challenge and affirm the superior court.

C. Supervised Visitation

Rose also challenges the trial court's order that Rose's visitation with her children be supervised. We have stated that "while unrestricted visitation is the norm, supervised visitation can be required when the court makes findings which specify why unsupervised visitation is contrary to the best interests of the child."[23] In this case the superior court made specific findings about the relationship between Rose and her children. It relied on those findings to determine that supervised visitation was appropriate. The court found that Rose's new husband engaged in inappropriate discipline of the children, Rose condoned Michael's conduct, the children felt unprotected by Rose from Michael's conduct, and Rose continued to be in a "state of denial" about what has happened to her children. In its holding on supervised visitation, the court emphasized that because of the emotional damage Rose had caused, she would have to rebuild her relationship with her children. The court recommended a flexible plan for later expanded visitation.
As Rose points out in her brief, we remanded grants of limited or supervised visitation in I.J.D. v. D.R.D.[24] and in J.F.E. v. J.A.S.[25] In both of those cases, however, we remanded because the court below failed to support its holding with specific factual findings.[26] By contrast, the superior court in this case provided ample specific findings about the need to protect the children from further emotional damage. We see no error in those findings, and affirm the superior court's decision to require supervised visitation.[27]

V. CONCLUSION

The trial court did not err in its treatment of Dr. Glass's raw data, nor did it err in requiring payment for deposition of the custody investigator. Rose Marlowe's objection to the hearsay contained in the custody investigator's report was not made in a timely manner and so was waived. Neither the court's order for modification of primary custody nor its order for supervised visitation constituted abuse of discretion, and neither relied on clearly erroneous controlling factual *754 findings. Therefore we AFFIRM the superior court.
NOTES
[1] All party names have been replaced with pseudonyms for the purpose of publication.
[2] Municipality of Anchorage v. Anchorage Daily News, 794 P.2d 584, 594 n. 19 (Alaska 1990) (citing Voegeli v. Lewis, 568 F.2d 89, 96 (8th Cir.1977)).
[3] Hutchins v. Schwartz, 724 P.2d 1194, 1197 (Alaska 1986).
[4] Gratrix v. Gratrix, 652 P.2d 76, 79-80 (Alaska 1982) (citing Horutz v. Horutz, 560 P.2d 397, 399 (Alaska 1977)).
[5] Although Rose's counsel asserted at oral argument that he had requested a continuance in the superior court, that request did not relate to the test data. Instead, counsel made the request "entirely" for the purpose of rebutting claims raised by the children's grandparents.
[6] Alaska R.Civ.P. 37(b)(3).
[7] Alaska R.Civ.P. 37(b)(3)(D).
[8] Wasserman v. Bartholomew, 923 P.2d 806, 811 (Alaska 1996) (considering whether trial court excluded testimony as discovery sanction under Rule 37, where trial court did not explicitly cite rule).
[9] See, e.g., Arbelovsky v. Ebasco Servs., Inc., 922 P.2d 225, 227 (Alaska 1996) (requiring consideration of "meaningful alternative sanctions"); Underwriters at Lloyd's London v. The Narrows, 846 P.2d 118, 121 (Alaska 1993) (requiring trial court to conduct reasonable exploration into less drastic sanctions).
[10] 923 P.2d 806 (Alaska 1996).
[11] Id. at 812.
[12] Ketchikan Cold Storage Co. v. State, 491 P.2d 143, 147 (Alaska 1971).
[13] 923 P.2d at 812.
[14] See Sykes v. Melba Creek Mining, Inc., 952 P.2d 1164, 1171 (Alaska 1998) (reversible error where trial court precluded expert witness testimony as sanction for untimely submission of witness list).
[15] A custody investigator such as Dr. Glass is considered an expert for purposes of this rule. See Alaska R.Civ.P. 90.6(a) ("[T]he court may appoint the court custody investigator to conduct the investigation and provide an expert opinion."); cf. Borchgrevink v. Borchgrevink, 941 P.2d 132, 143 n. 4 (Alaska 1997) (describing state custody investigator as an expert witness); Evans v. Evans, 869 P.2d 478, 480 (Alaska 1994) (considering custody investigator an expert witness). But see Lythgoe v. Guinn, 884 P.2d 1085, 1087-88 (Alaska 1994) (concluding that trial court may grant custody investigator quasi-judicial immunity).
[16] We do not consider Rose's broad motion in limine against admission of Dr. Glass's entire report and testimony a hearsay objection.
[17] Alaska R.Evid. 103(a)(1).
[18] See Williams v. Utility Equip., Inc., 837 P.2d 1112, 1116-17 (Alaska 1992) (holding objection waived where plaintiff failed to make specific objections when testimony presented).
[19] Preblich v. Zorea, 996 P.2d 730, 736 n. 17 (Alaska 2000) (quoting Padgett v. Theus, 484 P.2d 697, 700 (Alaska 1971)).
[20] See Monette v. Hoff, 958 P.2d 434, 436 (Alaska 1998).
[21] See Gratrix v. Gratrix, 652 P.2d 76, 79-80 (Alaska 1982).
[22] See id. (applying clearly erroneous standard for review of factual findings).
[23] Monette, 958 P.2d at 436 (quoting J.F.E. v. J.A.S., 930 P.2d 409, 409 (Alaska 1996)).
[24] 961 P.2d 425, 432 (Alaska 1998).
[25] 930 P.2d 409, 413-14 (Alaska 1996).
[26] See I.J.D., 961 P.2d at 432; J.F.E., 930 P.2d at 414.
[27] See Monette, 958 P.2d at 436.