NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREW M. PODEMS, | ) | |
| | ) | Supreme Court No. S-15242 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-11-02117 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MICHELE L. PODEMS, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1492 - April 9, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Andrew Podems, pro se, Newton, New Jersey, Appellant. Michele Podems, pro se, Union, New Jersey, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

**Introduction**

This appeal arises from Andrew and Michele Podems's divorce. Although they each had an attorney in the superior court, they appear in this appeal proceeding pro se. Andrew challenges the superior court's: (1) visitation order for him and his child; (2) determination that certain property was not marital; (3) denial of discovery

_____

\*      Entered under Alaska Appellate Rule 214.

sanctions; and (4) denial of his requests for specific spousal support and payment of attorney's fees.

**Custody**

Andrew and Michele married in New Jersey in 1999. In 2001 they moved to Alaska. They have a child, born in 2009, who has special needs. Andrew filed for divorce in August 2011.

Under interim orders Michele had primary custody and Andrew had limited supervised visitation rights. Michele had permission to move back to New Jersey with the child. Michele did move to New Jersey before trial; the parties appear to have understood that Andrew would be following shortly because at trial the visitation testimony was based on whether it would be feasible for the child to spend every other week with Andrew's mother in New Jersey. Shortly after the trial but before the superior court entered its decision, Andrew moved to New Jersey.

The court ultimately awarded Michele sole legal and primary physical custody of the child and provided Andrew limited supervised visitation that could be expanded to unsupervised visitation and monthly overnight visits if Andrew met certain conditions relating to his mental health. The court also noted that a 50/50 custody schedule was not appropriate because the child "lives in a different school district than Andrew and . . . has special needs." Andrew does not challenge the award of sole legal and primary physical custody to Michele, but does challenge the order for supervised visitation.[1]

When a court orders supervised visitation, it must support this order with findings that " 'specify how unsupervised visitation will adversely affect the child's

_____

[1] To the extent Andrew may be challenging the interim orders, we do not address those orders, but limit our review to the final order.

physical, emotional, mental, religious, and social well-being.' "[2] We " 'prefer that a court ordering supervised visitation also specify a plan by which unsupervised visitation can be achieved.' "[3] The court provided such a plan when it ordered that Andrew could have unsupervised visitation after six months if he were "actively engaging in mental health counseling and following a treatment plan recommended by his provider." This also informs us why the superior court concluded that unsupervised visitation is not in the child's interests — the superior court was concerned about how Andrew's mental health issues could affect the child.

Sufficient testimony supported the court's concern. Michele testified that she was concerned about Andrew's mental state when he threw her parents out of the house for speaking Polish, which was against the rules he set for them. A witness testified that Andrew was unpredictable and would use a gun to get attention. The same witness described an incident that took place shortly after Michele gave birth to the child, when Andrew picked up a wooden rocking chair and threatened to throw it on the ground because he was angry about Michele's parents. The witness compared Andrew to the mentally ill people she worked with as a registered nurse, and when asked if she was concerned about his mental health, she stated that she was "very much so." There was also testimony that on several occasions when Andrew was changing the child's diaper, Andrew jokingly laid the child on the floor and called the dog over to clean him. Andrew expressly asserted in his trial brief that he suffers from hypertension, anxiety, and depression, as well as various physical issues; and he testified that he has anxiety, posttraumatic stress disorder, and depression for which he previously was taking

---

[2] *Fardig v. Fardig*, 56 P.3d 9, 14 (Alaska 2002) (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 413-14 (Alaska 1996)).

[3] *Id.* at 14-15 (quoting *Monette v. Hoff*, 958 P.2d 434, 437 (Alaska 1998)).

medication.  In an earlier order denying Andrew's various motions the superior court noted observing Andrew's "erratic" and "odd emotional behavior" in court.

After reviewing the record, we see no abuse of discretion in the superior court's visitation order; we therefore affirm it.  Andrew may seek modification of the custody and visitation orders as he deems appropriate in New Jersey.[4]

## New Jersey Condominium

Prior to and for about two years after Andrew and Michele married, before moving to Alaska, they lived in a New Jersey condominium residence jointly owned by Michele's parents, Michele's brother, and Michele.  Andrew contended at trial that the condo was marital property.  This generated a discovery dispute when Michele did not produce records from her father's bank account for the condo, which had been made a joint account with Michele.  But the account documents were produced for trial, and Michele's mother was available to testify about the family's purchase of the condo with the children's names on the title for estate planning purposes.  Because the information was provided for trial, we conclude that the superior court did not abuse its discretion in not sanctioning Michele for the delay in production.  And because the testimony at trial regarding Michele's parents' purchase and use of the condo supports the superior court's determination that Michele's interest in the condo was pre-marital and had not been transmuted into marital property, we conclude that the superior court did not err in its decision that Michele's interest in the condo was not marital property.

---

[4]     The superior court should consider transferring any pending custody proceedings to New Jersey, where both parties and the child now reside.  *See* AS 25.30.310 (Uniform Child Custody Jurisdiction and Enforcement Act).

**Spousal Support**

Andrew asserts that the superior court erred in not ordering Michele to pay his first and last month's rent for housing directly to him after he left the family residence. When ordering Andrew to leave the family residence, the superior court ordered Michele to find housing for Andrew and to pay his first and last month's rent. Michele did so, but Andrew decided he preferred to live elsewhere. Michele was able to get the money she had paid for the apartment refunded, and Andrew then requested that Michele reimburse him for his first and last month's rent at his new housing. Michele contended she paid Andrew spousal support and gave him an additional $400, and Andrew also subsequently took substantial funds from a joint bank account. The superior court determined that Michele already had satisfied her obligation, and we conclude that the superior court did not abuse its discretion in not ordering Michele to give Andrew additional funds for rent and spousal support.

**Attorney's Fees**

Andrew asserts that the superior court erred by not ordering Michele to pay some of his attorney's fees. Andrew sought to have Michele pay for his attorney early on, but the superior court denied that motion. Andrew also twice requested attorney's fees as part of motions to show cause, but the superior court rejected those motions as well. The court noted that Andrew's attorney "cited no authority for granting his request, nor elaborated on why attorney's fees should be awarded." And, his earlier requests notwithstanding, Andrew's trial brief stated his position that the parties should bear their own attorney's fees, which is what the trial court ultimately ordered. We therefore do not address this issue.

**Michele's $25,000 Loan**

Andrew also asserts that it is unfair that Michele used marital assets for her attorney's fees, and contends he should be placed in the same position. This assertion was not specifically raised in the superior court, and with one limited exception, we do not address it here. The exception is Michele's $25,000 post-separation loan against her retirement account. Michele testified that she used the loan to pay her legal expenses and that she used some of it to repair the family home for sale.

The court divided the retirement account 50/50 with the apparent expectation that a qualified domestic relations order would be submitted to effectuate the division. Although not entirely clear, we assume from the lack of findings and analysis to the contrary that the superior court determined Michele's post-separation loan was separate debt. We are unable to find a qualified domestic relations order in the record before us, and therefore are unable to determine whether the actual division of the retirement account will be accomplished in a manner ensuring that any security or repayment obligation for Michele's loan is limited to her half of the retirement account. We therefore remand for the superior court to conclude the division of the retirement account with an appropriate order.

**Conclusion**

Based on the foregoing, the superior court's decision is AFFIRMED. We REMAND for the superior court to finalize the division of Michele's retirement account as noted.