NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RIDLEY G., | ) |
| | ) Supreme Court No. S-18033 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-20-00105 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1853 – October 27, 2021 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Jason A. Weiner, Jason Weiner & Associates, P.C., Fairbanks, for Appellant. Katherine H. Lybrand, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating.]

## I. INTRODUCTION

A father challenges the superior court's child in need of aid adjudication decision, contending that there was not adequate evidence supporting risk of harm to the child. Because the evidence supports the court's findings and the court correctly applied relevant law, we affirm the court's decision.

---

\*      Entered under Alaska Appellate Rule 214.

## II. BACKGROUND

Ridley G.[1] is the father of Ricky, born in February 2019 and an "Indian child"[2] under the Indian Child Welfare Act (ICWA).[3] The Office of Children's Services (OCS) became involved when Ricky's mother, Carmen, was taken to a hospital while suffering a mental health crisis in July 2020; she attempted to harm Ricky with hospital staff present. OCS filed an emergency petition for temporary custody.[4] The superior court granted OCS's petition and ordered that Carmen not see Ricky without OCS supervision. OCS placed Ricky with Ridley.[5]

In September police were called to Ridley's residence when he and Carmen had an altercation there; Ricky was present. Ridley was arrested, and he left Ricky with Carmen. OCS learned that Ricky was with Carmen in violation of the court's order and "that [Carmen] had been living in that home for six weeks." OCS filed another

---

[1]    Pseudonyms are used for all family members.

[2]    *See* 25 U.S.C. § 1903(4) (defining "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"). Ricky's mother is a member of a New Mexico tribe.

[3]    25 U.S.C. §§ 1901-1963; *see* 25 U.S.C. § 1902 (noting ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture").

[4]    *See* AS 47.10.142 (authorizing OCS to take emergency custody of child under enumerated conditions with direction to petition for court order regarding child in need of aid); CINA Rule 6 (regarding emergency custody proceedings).

[5]    *See* AS 47.10.084(a) (imposing on OCS, when possessing legal custody of child in need of aid, "responsibility of . . . determin[ing] . . . where and with whom the child shall live"); 25 U.S.C. § 1915(b)(i) (granting preference in foster care placement of Indian child under ICWA to "a member of the Indian child's extended family").

emergency petition for temporary custody and child in need of aid (CINA) findings under several subsections of the relevant CINA statute.[6] OCS placed Ricky in foster care.[7]

CINA adjudication proceedings began in January 2021 with continuations through March.[8] An OCS caseworker testified that Ridley was actively engaged with case planning and visits and that the caseworker did not know of any concerns about Ridley's visits with Ricky. Both the caseworker and Ridley testified to his involvement in a domestic violence prevention program. A tribal representative testifying as an expert in tribal cultural values and child-raising practices said that she believed removing Ricky from his parents' care was warranted for his own safety and was not contrary to the Tribe's cultural standards. An expert witness in parental risk and child welfare testified about her evaluation of Carmen, including the history of domestic violence between Carmen and Ridley and the impact of parental domestic violence on children.

After the close of evidence and the parties' closing arguments, the superior court continued the proceedings to the next day to put a decision on the record. But the

---

[6] *See* AS 47.10.011 (enumerating circumstances in which "court may find a child to be a child in need of aid").

[7] *See* AS 47.10.080(c)(1) (authorizing court to grant OCS temporary custody of child in need of aid); CINA Rule 6 (establishing rules for granting OCS emergency custody of child in need of aid).

[8] *See* CINA Rule 7(a) (requiring that "petition for adjudication of a child as a child in need of aid . . . contain a statement of facts that would support a finding that the child is a child in need of aid under AS 47.10.011" and providing that petition "may include a request for temporary custody under CINA Rule 10"); AS 47.10.080(a) (establishing adjudication hearing requirement); CINA Rule 15 (setting out process for adjudication hearing); CINA Rule 15(c) (providing OCS "has the burden of proving by a preponderance of the evidence that the child is a child in need of aid").

next day OCS asked to reopen the evidence to allow the expert witness in parental risk and child welfare to testify about her evaluation of Ridley. The court granted OCS's motion and continued the proceedings.

At the continued hearing the expert testified, based on her evaluation report, that Ridley was "prone to . . . explosive, angry outbursts" with "a history . . . of violence in his relationships . . . which seems to have somewhat accelerated over the last five years." She testified to concerns about "his ability to safely care for his son," including not having a childcare plan, and about his history of financial, employment, and housing instability. She testified that Ridley scored in the highest risk category on a domestic violence recidivism test and that she believed his "risk for future physical child abuse and neglect was high." Finally, she testified to believing, based on statements Ridley had made, that Ridley would continue allowing Carmen contact with Ricky.

The superior court ultimately found that Carmen's mental health issues, Ridley's history of violence, and the history of domestic violence between Ridley and Carmen created a "very serious and high risk for injury to their child." And the court pointed out that "nobody has talked about how placing [Ricky] back in [Ridley's] home . . . would not result in contact again between [Carmen] and the child." As to Ridley the court found, not just by a preponderance of the evidence but by the higher clear and convincing evidence standard,[9] that Ricky was in need of aid under AS 47.10.011(8) (exposure to domestic violence)[10] and (9) (neglect).[11]

---

[9] *See Evans v. McTaggart*, 88 P.3d 1078, 1079 (Alaska 2004) (requiring finding be made under "elevated" clear and convincing evidence standard rather than preponderance of evidence standard).

[10] AS 47.10.011(8) (providing child is in need of aid if "conduct by or conditions created by the parent . . . have . . . placed the child at substantial risk of mental

(continued...)

Ridley appeals; he contends there was insufficient evidence to support the court's domestic violence finding under AS 47.10.011(8) and the court thus also erred in its ICWA-required finding that Ricky was likely to suffer serious emotional and physical harm in Ridley's care.[12]

## III.   STANDARD OF REVIEW

"Whether a child is a child in need of aid . . . [is a] factual question[] . . . ."[13] "Whether a child would likely suffer serious physical or emotional harm if returned to a parent's custody is a question of fact."[14]  "In child in need of aid cases, 'we review the trial court's factual findings for clear error . . . .' "[15]  "Factual findings are clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that

---

[10]      (...continued)
injury").

[11]      AS 47.10.011(9) (providing child is in need of aid if "conduct by or conditions created by the parent . . . have subjected the child . . . to neglect"); *see also* AS 47.10.014 (defining neglect as "fail[ing] to provide the child with adequate . . . care and control necessary for the child's physical and mental health and development").

[12]      25 U.S.C. § 1912(f) ("No termination of parental rights may be ordered . . . in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.").

[13]      *Theresa L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 353 P.3d 831, 837 (Alaska 2015).

[14]      *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 550 (Alaska 2017) (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 309 P.3d 850, 856 (Alaska 2013)).

[15]      *Id.* (quoting *Emma D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 322 P.3d 842, 849 (Alaska 2014)).

a mistake has been made.' "[16] "We review de novo whether a superior court's findings satisfy the requirements of the CINA and ICWA statutes and rules."[17]

## IV.   DISCUSSION

"[O]nly one statutory basis is required for a CINA finding . . . ."[18] Ridley does not contest the superior court's finding that Ricky was a child in need of aid under AS 47.10.011(9) due to neglect.[19] And contrary to Ridley's arguments, the superior court did not err by finding Ricky to be a child in need of aid under AS 47.10.011(8) due to exposure to domestic violence. We address this finding because of its connection to the ICWA-required finding.

Ridley contends that the superior court, when making its child in need of aid findings, impermissibly relied on the expert witness's domestic violence and child abuse risk evaluation report. But the expert's report was admitted without objection, any objection Ridley may have had thus is waived, and the court did not err by relying on the report.[20] The court additionally heard some testimony about Ridley's history of domestic

---

[16]     *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1162 (Alaska 2016) (alteration omitted) (quoting *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1264 (Alaska 2014)).

[17]     *Dale H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 235 P.3d 203, 210 (Alaska 2010).

[18]     *Jon S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 212 P.3d 756, 762 (Alaska 2009).

[19]     And "[b]ecause only one statutory basis is required for a CINA finding, we do not need to address the superior court's other CINA findings." *Id.*

[20]     *See R.M. v. S.G.*, 13 P.3d 747, 752 (Alaska 2000) (holding superior court properly admitted and considered hearsay statements contained in expert witness's report when party did not object to admission of report and statements it contained).

violence. The OCS caseworker testified that the parents' domestic violence history was "quite alarming." There was testimony, including from Ridley, about his involvement in a domestic violence prevention program. The expert witness testified about the contents of her evaluation report, including incidents of domestic violence; evidence before the court included reports of violence in Ridley's previous relationship, reports of domestic violence between Carmen and Ridley, and Ridley's September arrest for domestic violence against Carmen when Ricky was present. The court did not clearly err by finding Ricky a child in need of aid due to risk associated with exposure to domestic violence.

Before removing an Indian child from the home, ICWA requires an additional finding that "continued placement in the home is contrary to the welfare of the child" and that "there is clear and convincing evidence, including the testimony of qualified expert witnesses, that custody of the Indian child by the parent . . . is likely to result in serious emotional or physical damage."[21] The expert testimony must establish a "causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the . . . child."[22] Ridley made no objections to the expert witness's qualifications or to the court's acceptance of her as "an expert in parental risk and child welfare." She testified about the emotional and behavioral problems that can arise when a child has witnessed violence between the child's parents and about her conclusion regarding Ridley being a high "risk for future physical child abuse and neglect." The superior

---

[21] CINA Rule 17(d)(2); *see* 25 U.S.C. § 1912(e).

[22] *Eva H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 1050, 1054 (Alaska 2019) (quoting 25 C.F.R. § 23.121).

court found that Ricky was likely to suffer serious emotional or physical damage from exposure to domestic violence.

Ridley first contends this finding was based on the superior court's erroneous domestic violence CINA finding. But, as discussed above, the court's finding under AS 47.10.011(8) was not erroneous. Ridley also contends that the expert's report was outdated and could not be relied upon because he had been actively involved in treatment programs subsequent to her evaluation. But acknowledging Ridley's efforts, the superior court nonetheless pointed out that "[t]he dangers are not passed" and that "[i]t would be contrary to the welfare of [Ricky] to be returned to either parent without further completion of their remediative efforts." Because Ridley had not yet completed rehabilitative programs and demonstrated an ability to control his anger, the court did not err by finding clear and convincing evidence that Ricky was likely to suffer physical or emotional damage if he were in Ridley's care.

V.    **CONCLUSION**

We AFFIRM the superior court's adjudication decision.